Exhibit 2 - Continued

# D. STATEMENT OF CLAIMS

## Introduction

1.      **COMES NOW**, Tiffany Grays, ("Plaintiff" or "she" or "her") makes claims against

Defendants:  Auto Mart USA, LLC; Auto Mart; Auto Mart USA2 ("AUTO" or "Defendants")

Jorge Pacheco; Daniel Ramirez, JB Ovalle; Donnie McElroy; Marco Sandoval; Jay Barber or

("Defendants") in accordance with the Fair Credit Reporting Act, 15 U.S.C. Sections 1681 et

seq. ("FCRA"); Equal Credit Opportunity Act of Title VII;  the Federal Truth In Lending Act; 15

U.S.C. §7001 et seq., F.C.R.P. 57,  F.C.R.P. 9, Electronic Signatures in Commerce;  the Duties

of Furnishers of Information to Consumer Reporting Agencies Ru1e, 16 C.F.R. C 660, section

623(e)(l) of the FCRA, 15 U.S.C. § 1681s-2(e)(1),  recodified as Duties of Furnishers of

Information, 12 C.F.R. § 1022, subpart E, and multiple Colorado Constitution Violations.

Plaintiff brings this action as a result of the Defendants' *inter alia*, fraudulent behavior and

misrepresentations, luring the Plaintiff with knowingly false advertisements of "[A]sk About Our

Credit Approval Guaranteed;" vehicles posted online for sale, with known, undisclosed salvaged

titles; failing to disclose changes in contract terms, during sale, upon notification and

culminating with disparate treatment; denying the Plaintiffs' loan absent business reason.

Defendants required the Plaintiff to return the vehicle, despite the guarantee of the Defendants,

by the Defendants. This action due to the Plaintiff standing up to all five men involved in the

sale; not letting the men run the negotiation and requiring AUTO's financial commitment to a

12-month warranty, as a dark-skinned woman. Plaintiff seeks injunctive relief, damages,

restitution in her favor and penalties, against the Defendants, regarding the Defendants'

discriminatory, fraudulent, and intentionally false, soft credit-check promises, bad faith, non-

compliant and unlawful practices during the purchase and eventual return of a 2013 Dodge

Journey on or about March 20, 2018. The Defendants actions have caused multiple injuries to the

Plaintiff, *inter alia,* consumer credit score damage, mental and emotional distress, and financial

losses. Thus scienter exists.

## JURISDICTION & VENUE

2.      Jurisdiction of this Court is maintained through the FCRA, and 28 U.S.C. § 1355(a).

Additionally, this Court has declaratory jurisdiction pursuant to 28 U.S.C. §2201. Claims for

relief that are based on the Colorado Constitution, have the same nucleus of operative facts and

are so related to the federal-law claims that they form part of the same case or controversy. This

Court has jurisdiction over the supplemental state-law claims pursuant to 28 U.S.C. § 1367.


3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C.A. § 1391(a), due to a

substantial part of the events or missions giving rise to the claims in this matter occurred in the

State of Colorado and in accordance with 15 § U.S.C. 1640(e).


## PARTIES

4.      Plaintiff is an individual over the age of 18 who resides in Aurora, Colorado. Plaintiff

conducted all business transactions with the Defendants in Aurora, Colorado.

5.      Defendants Auto Mart USA, LLC; Auto Mart and Auto Mart USA2, collectively

("AUTO"), with registered address of 835 S Havana St. Aurora CO, 80012 United States; is an

American corporation in automobile sales which, at all times relevant herein, as licensed to do

business and was conducting business, in the State of Colorado. AUTO engaged its business

operations from its principal place of business on 835 S Havana St. Aurora CO, 80012 United

States. AUTO has a registered agent, Daniel Ramirez, within the state of Colorado at 835 S

Havana St. Aurora CO, 80012 United States. The Defendant regularly engages in sales and credit

and must comply at all times with State and Federal Laws.


6.      Defendant Daniel Ramirez, as of July 09, 2018, does not hold an active Colorado

Department of Revenue, Motor Vehicle Salesperson license, associated with AUTO MART

USA. At the time of the alleged offenses Daniel Ramirez was an employee of Auto Mart USA

and is being named in his official capacity as Operations Manager and as an individual. Mr.

Ramirez participated in the unlawful events after the unlawful sale and is ultimately responsible

for the disparate treatment.


7.      Defendant Jorge Pacheco as of July 09, 2018, according to Colorado Department of

Revenue website, does not hold an active Colorado Department of Revenue, Motor Vehicle

Salesperson license, associated with AUTO MART USA. At the time of the alleged offenses

Jorge Pacheco was an employee of Auto Mart USA and is being named in his official capacity as

Sales Consultant and as an individual. Mr. Pacheco participated from initiation of the unlawful

sale and ultimately sold the vehicle to the Plaintiff, as well as, the luring the Plaintiff with the salvaged title performance.

8.      Defendant JB Ovalle as of July 09, 2018, does not hold an active Colorado Department of Revenue, Motor Vehicle Salesperson license, associated with AUTO MART USA. At the time of the alleged offenses JB Ovalle was an employee of Auto Mart USA and is being named in his official capacity as Sales Consultant and as an individual. Mr. Ovalle participated in the unlawful sale of the vehicle through luring the Plaintiff with salvaged title performance.

9.      Defendant Marco Sandoval holds an active Colorado Department of Revenue, Motor Vehicle Salesperson license # 31639, associated with AUTO MART USA and was an employee of Auto Mart USA, at the time of the alleged offenses. Marco Antonio Sandoval is being named in his official capacity as General Manager and as an individual. Mr. Antonio participated in the unlawful sale of the vehicle and the unprofessional and unlawful events after the unlawful sale.

10.     Defendant Donnie McElroy holds an active Colorado Department of Revenue, Motor Vehicle Salesperson license # 22175, associated with AUTO MART USA and was an employee of Auto Mart USA, at the time of the alleged offenses. Donnie McElroy is being named in his official capacity as Sales Manager and as an individual. Mr. McElroy participated in the sale of the vehicle and the unprofessional and unlawful events after the unlawful sale.

11.     Defendant Jay Barber does not hold an active Colorado Department of Revenue, Motor Vehicle Salesperson license, associated with AUTO MART USA and was an employee of Auto

Mart USA, at the time of the alleged offenses. Jay Barber is being named in his official capacity as F&I/Marketing Manager and as an individual. Mr. Barber participated in the denial of credit and fraudulent statements provided in the adverse action notice.

# BACKGROUND

12.     Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference, *inter alia*.

13.     The Plaintiff set out 2018 with a goal of purchasing a home within the year. The Plaintiff enrolled in an expensive credit repair program, to assist in accomplishing this goal. The Plaintiff made a concerted effort to ensure the checks run against her credit, were not going to damage it, as the 2018 goal is to purchase the home. The Plaintiffs' career in Software Product Management, and moving residences, adds an additional value on her consumer report, as jobs over $100,000, often require credit checks. Credit is incredibly important to both moving to another rental or buying a home.

14.     Ms. Grays was making great progress towards improving her score, to buy that home. In March 2018 her score was rising, almost where she needed it to be, to qualify for a home mortgage. Due to Defendants unlawful and unethical ten hard inquires, Plaintiffs' credit score has plummeted about seventy-five points in just two months. The Plaintiff has wasted money, time and energy repairing her credit, only for AUTO to ruthlessly and recklessly damage it. The true cost has yet to be determined and will likely take years to determine.

15.     Ms. Grays has been a single mother of 2 daughters for the past 12 years, Auto Mart's unprofessional and unethical conduct has only caused more damage to members of the household. Taking time and energy away from her children, when she already has limited amount, to deal with the willful and wanton conduct of the Defendants. The Plaintiff prays this action will prevent the Defendants' unlawful conduct from negatively affecting other innocent consumers residing within the State of Colorado.

16.     Prior to the Plaintiff attempting to purchasing a vehicle at AUTO, the Plaintiff has purchased vehicles from several dealerships. Some have been financed, outsourced and others have been financed in-house. The Plaintiff could not determine if AUTO was one or the other, which is why the Plaintiff continued to confirm the type of credit check being conducted. To the Plaintiffs' knowledge, when a soft credit check is done, those do not require outside financing, indicating financing in-house. Which would support the Defendants' "[A]sk About Our Credit Approval Guaranteed." The Plaintiff was told to bring her payments into the physical location, which also supports in-house financing, only requiring a soft credit check.

17.     The Plaintiff confirmed AUTO was only submitting soft credit checks with Jorge Pacheco, Donnie McElroy and Marco Sandoval, multiple times, each person; before, during and after the sale. The Plaintiff was concerned about the damage to her credit. The Defendants' knew they were not conducting soft credit checks, as indicated on recorded call with Sales Manager Donnie McElroy. Donnie states, all the hits add up as one and after a couple months stop impacting the score. A soft check would not impact the score, thus, fraudulently misleading the

Plaintiff from the beginning of the sale. These licensed salesmen also go through rigorous testing

and understand the differences in types of checks against consumer credit reports.


18.     This has been a tumultuous few months for the Plaintiff. The negligence exhibited by

AUTO has negatively impacts the Plaintiffs' credit, emotional health, personal goals and life.

The Plaintiff created a review on google which recounted the events and has been liked by other

shoppers in the area. There are other reviews on Google which echo similar stories as the

Plaintiff, of salesmen worried about the sale and practicing unethical, unprofessional behavior

openly, mixed in with good reviews. It appears the sales people at AUTO have good days and

bad days, the Plaintiff, unfortunately caught a bad day. The Defendants were motivated by

monetary gains, and disgorgement of the same measure should be induced.


19.     Plaintiff has contacted Defendants multiple times in attempt to resolve this issue, to no

avail. Ms. Tiffany Grays contacted AUTO on or about March 17th, 2018, regarding the purchase

of a used vehicle, a Mitsubishi Outlander which the Plaintiff viewed online within her price

range of around $16k.


20.     Prior to the Plaintiff stepping foot onto the property, the salesman at AUTO pounced onto

her wallet. The Plaintiff received a text message from JB Ovalle, regarding the Outlander,

asking, "[W]hen would you like to come in for a test drive?"  Failing to note the salvaged title.

21.     The Plaintiff then calls AUTO and speaks with someone about the Outlander, to confirm

if it is still available, before travelling. The salesperson confirms the vehicle is still available, and

schedules an appointment. Plaintiff also asked about the "[A]sk About Our Credit Approval

Guaranteed," and was advised everyone gets approved, before making the trip to AUTO.


22.     Jorge knowingly then texts the Plaintiff, after the Plaintiff has spoken with a different

salesman, attempting to undercut his co-workers, and says to "[a]sk for Jorge Pacheco ("Jorge"),

when [the Plaintiff] arrive[s]." Additional examples of the deceitful, dishonest behavior tolerated

and exhibited at Auto Mart USA.


# FACTUAL ALLEGATIONS

23.     Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein

by reference, *inter alia*.

## a.  Deceptive Practices

24.     On or about March 17th, 2018, as soon as the Plaintiff drives her current vehicle onto the

Auto Mart parking lot, an older Caucasian saleswoman hangs around the Plaintiffs' vehicle, until

the Plaintiff exits her vehicle; when she finishes a phone call, about 15 minutes. This makes the

Plaintiff uncomfortable, upon arrival at 835 S Havana St. Aurora CO, 80012. The Plaintiff is

with her 12-year-old daughter, as they head into the sales floor.


25.     Jorge is the first to greet the Plaintiff, so she decides to work with him. Jorge immediately

takes all the Plaintiffs' paperwork and begins to enter information into his computer. Jorge then

hands the Plaintiff a 7-field simple, non-formal credit application, as a soft credit check application, and asks the Plaintiff to complete the fields. The Plaintiff fills out in the fields and gives it back to Jorge.  Plaintiff confirms before and after with Jorge that the check is soft.

26.     After about 15 minutes of casual conversation and the Plaintiff re-verifying the use of a soft credit check, Jorge motions to the Plaintiff that it is time to look at vehicles. Jorge, the Plaintiff and child exit the building, Jorge then tells the Plaintiff, the vehicle she texted about, called about, travelled about, filled out paperwork about, has a salvaged title.

27.     The Plaintiff felt taken advantage of by many different people. As multiple people with a duty to disclose should have told her, but consciously decided to omit legally required information. Luring the Plaintiff onto the premises, just to attempt to complete a sale.

28.     The Plaintiff expressed her frustration and Jorge apologized. Jorge showed the Plaintiff a vehicle that was not appealing. Similarly, the second vehicle shown, was not up to standard. Expressing her lack of patience, salesman and Assistant Manager, Donnie McElroy ("Donnie"), over hears the Plaintiffs' angst and offers assistance.

29.     Jorge and Donnie have a short conversation before bringing the vehicle that is chosen by the Plaintiff. The 2013 Dodge Journey is fully loaded, a little over price range, but fun to drive. The Plaintiff talks numbers with Jorge.

30.    Jorge commits the vehicle will have a warranty for an additional 17 months or to 100,000

miles. The Plaintiff and Jorge go back and forth over trade in value of  the Plaintiffs' 2008

Dodge Durango. Ultimately, the following terms are settled upon:

> A.  $2,000 Trade-In Allowance
> B.  $16,990 For the 2013 Dodge Journey
> C.  17-month or to 100,000 miles warranty

31.    Jorge begins printing all the paperwork required to purchase the vehicle. The Plaintiff

confirms again, with Jorge, that Jorge only ran a soft credit check, Jorge confirms. The signing of

the paperwork begins, when the Plaintiff and Jorge arrive at a document stating there is not a

warranty on the vehicle, the Plaintiff stops and refuses to sign that document.

32.    Jorge attempts to reassure the Plaintiff verbally that the vehicle has a warranty, urging the

Plaintiff to just sign it. The Plaintiff refuses, as she knows it needs to be in writing. After

rejecting Jorge's' forceful attempts multiple times, Jorge relents. Jorge asks the Plaintiff if

verification of the warranty via printed Carfax report, would suffice; the Plaintiff agrees.

33.    Upon printing the Carfax, Jorge does not immediately provide the report to the Plaintiff.

Jorge acts suspiciously, as he wants to continue signing the rest of the paperwork and come back

to the warranty document last. After conferring again with Sales Manager Donnie, Jorge finally

reveals the vehicle does not have a warranty, according to the Carfax report. Jorge attempts to

save the sell by stating the Finance Manager will discuss the warranty with the Plaintiff at the next step in the process.

34.     The warranty document remains unsigned as the Plaintiff is transferred to the Finance Manager, Marco Sandovals' ("Marco"), office. Marco also wants to proceed signing other paperwork without addressing the warranty. When Marco comes to a different document that states no warranty, the Plaintiff again refuses to sign.

35.     The Plaintiff advises Marco, of Jorge's promises to her regarding the vehicle warranty. Marco argued with the Plaintiff. After a few minutes of arguing with the customer, Marco advises the Plaintiff, that the vehicle does not have a warranty, and will not have one, so take it or leave it.

36.     The Plaintiff decides to leave the offer and leaves the office requesting all of her paperwork and $1000 check. As the Plaintiff and child stand by the front door of the business, Jorge hands the Plaintiff her paperwork. The Plaintiff attempts to leave, but notices the $1000 check is missing. 15 minutes elapse while multiple salespeople go in and out of Marcos' office, attempting to save the sale.

37.     While standing by the front door waiting on the $1000 check, a man introduces himself to the Plaintiff, only as Steve. Steve initially offers a 3-month warranty, which the Plaintiff rejects. Steve comes back with 12-month warranty, and the Plaintiff accepts.

38.     The Plaintiff, back in Marco's office, forces Marco to write the 12-month warranty on a document entitled, 'We Owe, You Owe." Marco reluctantly includes the 12-month warranty and the issue with the wipers on the document.

## b.  Funds & Goods Return

39.     On March 20, 2018, late in the afternoon, Donnie calls the Plaintiff and advises AUTO was unable to get her financed, and bring the vehicle back. The Plaintiff asks to return the vehicle the next day, as the Plaintiff was just terminated from her job. Donnie refuses and forces her to bring it back that night, failing to show the "heart," they say they have or to treat the Plaintiff as "family." The Plaintiff complies.

40.     Around 7pm on March 20th, the Plaintiff returns the 2013 Dodge Journey to the Defendants business on Havana St. Upon arrival, Donnie has the Plaintiffs' Rollback Form, indicating the return of the vehicle. There is an error on the form, as it indicates no deposit. Donnie, corrects this and both Donnie and the Plaintiff initial the correction. It is unclear if the act of omitting the $1000 was intentional or unintentional, as the deposit is noted on all paperwork.

41.     Donnie advises Plaintiff the person who has access to the checks, left and the Plaintiff will have to come back the next day to receive her personal check back. The Plaintiff voices her frustration, as Donnie was aware the Plaintiff was bringing the vehicle, and should have procured

her payment. The Plaintiff confirms again with Donnie, the credit check was only a soft credit check, Donnie affirms.

42.     On or about March 23rd, the Plaintiff returns to retrieve her payment and have the oil in her Dodge Durango changed, using the free oil change coupon she received during the purchase. The Plaintiff notifies the secretary that she is picking up her payment.


43.     A man named Jay Barber ("Jay"), approaches the Plaintiff and advises that Jay needs proof that the money came out before AUTO can return the money. The Plaintiff shows the $1,000 deduction from her Key Bank checking account, showing the date, showing the withdrawal amount before and after, from the official banking app on the Plaintiffs 'cell phone.


44.     Jay confirms, leaves, then returns 5 to 10 minutes later to inform the Plaintiff that AUTO needs a screenshot of the Plaintiffs' private personal account information as proof. The Plaintiff questions this request, as this request is abnormal of any business and will contain information that is unrelated to this matter, to which the Plaintiff is uncomfortable. The Plaintiff waited 3 business days after Sales Manager Donnie advised the Plaintiffs' check would be available. AUTO has now deposited the check, instead of returning the check as discussed, and wants to invade the privacy of the Plaintiff due to operational issues. Jay Barbers' request is absurd, and indicative of the business operations being conducted at Auto Mart USA.


45.     The Plaintiff initially refused Jays' request, as the Plaintiff does not want other private information, having no correlation to the $1000 check, within the screenshot. Similarly, the

banking app does not allow screenshots to be taken, for privacy and security reasons.
Reluctantly, the Plaintiff allows Jay to take a picture of the proof with his personal cell phone.
Due to the escalation of the situation, Donnie had come over to assist. At which time, the
Plaintiff again asks Donnie to confirm if only a soft credit check was performed.

46.     Donnie takes the opportunity to ask the Finance Manager, Marco, who confirms loudly
enough for the Plaintiff to overhear, that indeed, only a soft credit checks was performed. Jay
brings the check a short time later and the Durango is ready to drive soon after.


47.     The lender Premier Members Credit Union confirmed the Plaintiff was approved for a
loan, but the Defendants refused to submit the necessary documents, to complete the loan. The
Defendants willfully declined to submit the documents as an act of disparate treatment against
the Plaintiff for being a dark-skinned woman who refused to accept the bullying and fraudulent
misrepresentations of the multiple men she dealt with.


48.     The Defendants also did not want to be responsible for paying the warranty for the
vehicle for the 12 months.


### c.  Credit Damage

49.     On or about April 06, 2018 Auto Mart USA, mailed a letter to the Plaintiff indicating her
credit was not approved by Auto Mart. It also states the Plaintiffs' application was not submitted
to other financial sources. It states, in relevant part: "[I]f we checked NO above, that means we
made the decision on your application without submitting it to another creditor." The box above

was in fact checked NO and this letter is signed by Finance Manager, Jay Barber of Auto Mart. This statement supports the Plaintiff's version of events, stating Donnie's multiple advisements of the soft credit check.

50.     On or about April 12th, Plaintiff called Auto Mart because multiple letters were received from potential credit grantors stating Auto Mart had attempted gaining credit approval on behalf of the Plaintiff. At this time, the Plaintiff also noticed hard checks showing on her consumer credit report. The Plaintiff spoke with Marco, advising of the multiple soft check promises. Marco denies the Plaintiffs' claims advising, it is unbelievable that Donnie would say it was only a soft check. Marco declines to assist in finding a resolution.

51.     The Plaintiff calls AUTO the following week and speaks with Donnie, who is willing to confirm the use of soft credit checks, verbally, only. When the Plaintiff asks for the soft credit check policy to be given to her in writing, Donnie, the Sales Manager, adamantly refuses. Donnie then advises the Plaintiff, to get anything in writing, the Plaintiff would need to speak to the Finance Manager. Donnie is allowed to speak, but not write. When the Plaintiff asks to speak with the Finance Manager, she is put on 'proverbial hold,' and hangs up the phone, after about 20 minutes. This call was recorded.

52.     By Auto Marts' own account, according to the document they sent to the Plaintiff on or about April 6th, and on par with the Plaintiff's version of events, in total, 10 lenders have been provided the Plaintiffs' information, in violation of multiple State and Federal laws, whom are:

1.  Ally Bank;   2.   Premier Members Credit Union;   3.   Open Lending LLC (LendPro);
4.  Flagship Credit Acceptance LLC; 5.Pikes Peak Credit Union;  6.Aventa Credit Union;
7.  Mountain America Credit Union;   8. Regional Acceptance Corporation;
9.  Prestige Financial Services;   10. Arapahoe Credit Union.

53.     The aforementioned lenders' hard credit inquiries, have significantly, negatively,

impacted the Plaintiffs' credit reports at one or more of the following bureaus: Equifax,

Experian, TransUnion and SageStream. Unfortunately, the Plaintiff does not have the positive

effects of a new revolving line of credit, to offset the hard inquires, as Dan, maliciously had the

contract cancelled.

54.     In March 2018 the score Experian was reporting the Plaintiffs' credit score to be at,

dropped only 2 points in April 2018. In May 2018, the Plaintiffs score takes a dramatic plunge as

all the hard inquiries catch up to reporting. Currently, the Plaintiffs' score has dropped about 75

points, just within the one month. Nothing else in the Plaintiffs' credit report has changed to

explain the difference in score. This is because of these unauthorized hard inquires.

### d.  Unlawful Conduct

55.     The Plaintiffs' credit was approved by Premier Members Credit Union for the purchase

of the vehicle from AUTO. The Defendants' denied the credit application of the Plaintiff,

through their inaction, for reasons outside of business reasons. Meanwhile, the Defendants have

advertising of "[A]sk About Our Credit Approval Guaranteed," in multiple places, permanent

places. The Plaintiff was not approved, after being promised "guaranteed approval," via initial

phone call.

56.     A sign sits permanently on the corner of the entrance onto the Defendants' business. The sign contains the verbiage, "[A]sk About Our Credit Approval Guaranteed." This sign does not contain any disclaimers, notices, asterixis or terms.

57.     On the envelope given to the Plaintiff upon purchase of the vehicle, the "[A]sk About Our Credit Approval Guaranteed," is also printed and has been so for over 3 years. This sign does not contain any disclaimers, notices , asterixis or terms. This envelope is provided to all customers who purchase a vehicle.

58.     The Defendants also consistently promise they are "[D]ealers with a heart," yet no one has treated this Plaintiff with compassion, operated in good faith, or shown the Plaintiff how the Auto Mart USA staff on 835 S Havana St, are "[D]ealers with a heart."

59.     Upon discovering the mass amount of hard checks against her credit, the Plaintiff has made multiple attempts to resolve this dispute with AUTO. Phone calls, letters and personal visits have been made, all to no avail, due to the unprofessional, unethical and unlawful conduct from the employees and owners of Auto Mart USA located at 835 S Havana St.

60.     The Plaintiffs' first resolution attempt was simply requesting the Defendants to do the right thing, correct the error, by sending a letter to the Credit bureaus, requesting the hard inquires to be removed, the Defendants rejected.

61.     Permission was never granted for AUTO to run hard credit inquiries or to permit or authorize other lenders to run hard credit inquiries, nor give any authorization for any employee or agent to perform credit checks that would be considered hard by the credit bureaus.

62.     On or about May 18, 2018, the Plaintiff paid firm Riggs Abney, et al., through her Legal Shield membership, to send the Defendants a legal letter, asking, simply requesting the

Defendants to do the right thing, correct the error, by sending a letter to the Credit bureaus, requesting the hard inquires to be removed, the Defendants rejected.

63.     On or about May 21, 2018, Operations Manager, Dan Ramirez ("Dan"), sends a letter, willfully and wantonly, inappropriately, back to the firm Riggs Abney, et al., The letter sent from Riggs Abney, et al., directs Dan to contact the Plaintiff. Dan purposefully decides to do the opposite, as revealed in the Plaintiff's and Dan's, soon to come discussion on or about May 29, 2018, at the physical location, 835 S Havana St. Aurora, CO 80012.

64.     Within the letter Dan provides to the Plaintiff, on or about May 18, 2018, there is an attachment of a purposefully cut-off, credit application. In the letter, Dan states this is where the Plaintiff permitted AUTO to run the hard inquiries, yet only contains the disclaimer at the bottom. The attachment fails to show any of the Plaintiffs' personal information, therefore, cannot validate the authorization AUTO claims it possess to the Plaintiffs' consumer credit report.

65.     Dan Ramirez is the Operations Manager and leader AUTO, a business. Dan consciously decides to send an antagonistic response, in response to a letter from a professional attorney, which communicates Dan's willful participation in overtly, unethical, unlawful practices; and an unwillingness to do the right action. AUTO declined multiple opportunities to prove their actions have been true and correct, yet have chosen not to do so. Dan, seemingly a poor example for the employees at Auto Mart USA, on 835 S Havana St.

66.     Within the letter Dan provides to the Plaintiff, on or about May 18, 2018, Dan also directs the Plaintiff to contact AUTO's legal counsel, but does not provide the name, address, email address or phone number, to do so. Another example of the unethical and bad faith conduct

allowed at Auto Mart USA. Another example of the amount of distain Dan has for the Plaintiff,

because the Plaintiff is a dark-skinned woman who would not tolerate the deplorable behavior

exhibited by the salesmen.

67.     Dan admits, directly to the Plaintiff, nonchalantly in front of employees and customers,

the cutting of the personal information off, in the response to the letter received by attorneys on

behalf of the Plaintiff, was a purposeful action, on or about May 29th. Dan goes on to refuse to

provide the Plaintiff a copy of this document, this credit application. The Plaintiff was not

provided a copy of this document on the day the vehicle was purchased. It is unclear if this was

intentional or due to the salesmen dealing with the warranty issue and saving the sale.

68.     After receiving the blatantly overt bad faith letter, the Plaintiff called AUTO and spoke

with Marco, who refuses to provide her a copy of all documentation pertaining to her sale in

AUTO files and the contact information of legal counsel, per the response from Daniel Ramirez,

Owner and Registered Agent. Marco advises the Plaintiff she must obtain that information from

Dan.

69.     On or about May 29, 2018, the Plaintiff physically goes to the location to obtain copies of

all her paperwork and legal counsel information for AUTO. Dan willingly creates a scene in

front of perspective customers, only to continue to refuse the Plaintiffs' requests for copies of all

documentation and legal counsel information. The Plaintiff returns on or about June 07, 2018

and leaves written notice, requesting her paperwork, with Marco.

70.     The Plaintiff has been denied copies of her all paperwork, in her file at Auto Mart,

including a copy of her credit application, multiple times. Additionally, AUTO does not have

any posted processes surrounding how clients request their records, when, how, what or where.

There is not any documentation posted online on how to retrieve this information as well.

# CAUSES OF ACTION

71.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein

by reference *inter alia*: (See Complaint for Counts not listed)

### COUNT ONE: SUPPORTING FACTS FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT

## i.    Users of Consumer Reports Violations

72.    Defendants would be considered users of consumer reports according to 15 U.S.C. §

1681m.  Defendants have violated:

a.    15 U.S.C. § 1681m (a) and 15 U.S.C. § 1681r by providing an adverse action written

notice, dated April 06, 2018, which indicated no outside sources were contacted for

financing, when they actually were, ten in fact.

b.    15 U.S.C. §§ 1681m (a)(3)(A) and 1681m (h)(5) by stating to the Colorado Department

of Revenue Auto Industry Enforcement Division,

> "[A]uto Mart USA states that they would have been willing to finance you
> if you were willing to provide a larger down payment, typically 50% or more.
> They state you were unwilling to provide a larger down payment. We have
> verified that they do have "in house" lending available so it doesn't appear that
> this is a violation."

Proving the adverse action written notice received is forged, as it does not state the larger

down payment as the reason for the adverse action, in addition to the fact that AUTO

provided the consumer report to ten (Amended Complaint ¶30) outside sources for financing.

c.   15 U.S.C. §§ 1681m (h)(1) and 1681m (h)(5)(A) by failing to '[i]nclude a statement informing the consumer that the terms offered to the consumer are set based on information from a consumer report;" at the time of vehicle purchase, as Plaintiff left approved.

15 U.S.C. § 1681b(a)(2), 1) by failing upon sale and willfully refused post sale, to provide the Plaintiff a copy of the Plaintiffs' credit application/written statement, proving the Defendants authorization to perform the hard inquiries against the Plaintiffs' consumer credit report. The Plaintiff requested copies of all documentation and has been denied on each of the following occurrences: (1) March 17, 2018; (2) March 20, 2018; (3) May 29, 2018; (4) June 01, 2018; and (5) June 07, 2018. 2) The written instructions did not include authorization for the Defendants to run hard inquiries against their consumer reports as described.

d.   15 U.S.C. § 168Ig(a)(I), by and through the acts and practices described herein, Auto Mart has violated section 609(a)(I) of the FCRA.

e.   15 U.S.C. § 1681r by Defendants providing the Plaintiffs' consumer information to third-party lenders, it did so when it did not possess the authorization, under the terms of 'soft checks,' and according to the adverse action notice.

f.   Plaintiff has established that in fact, she does possess a consumer report, and in fact the Defendants did access that consumer report without legal permissible purposes, on or about March 17, 2018. Defendants then unlawfully used the consumer report, and

provided authorization to ten other lenders (¶52), while implicitly stated, "soft checks," thereby without statutory permission, as Plaintiff never granted permission in accordance with 15 U.S.C. § 1681b(a).

### ii.    Furnisher of Information to CRA's

73.    Furnishers of information to CRAs,' have additional requirements as stated in 15 U.S.C. § 1681s-2(a)(2)(A), because the Defendants "[r]egularly and in the ordinary course of business furnishes information to one or more CRA's about its "transactions or experiences" with consumers." Auto Mart regularly reports information to other third party CRA's, which are defined as CRA's in 15 U.S.C. § 1681a(f) and therefore is in violation of 15 U.S.C. § 1681b(f)(1), as Defendants held not any legal authority under Section 604, violating Section 604(a)(3)(A) and Section 604(a)(3)(F)(ii).

74.    Auto Mart failed the Plaintiff through inaction, including failure to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers which Auto Mart furnishes to other third party CRA's. Ignoring the guidelines established in appendix E of 12 C.P.R.§ 1022.42.

75.    Auto Mart's failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statutes 15 U.S.C. § 1681s-2(a)(2)(A) and 15 U.S.C. § 7001.

76.    AUTO violates Section 623(a)(2) by failing to correct the incorrect inquires on the Plaintiffs' consumer report, upon identification of the issue. Defendants wait until this Complaint is filed to take action, to do the right action.

77.     AUTO has therefore obtained the Plaintiffs' consumer information under false pretenses and should be fined and imprisoned under title 18, pursuant to 15 U.S.C. § 1681q.

78.     Defendants failed to disclose at consummation of the transaction the required disclosures pursuant to 15 U.S. Code § 1681g.

**COUNT TWO: SUPPORTING FACTS FOR VIOLATIONS OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1604(b); 12 CFR §§ 226.17(a)(1),(b); 226.17(c)(1)-(2)**

79.     The Federal Truth in Lending Act, 15 U.S.C. §§ 1601-1667f, as amended, also known as, Title I of the Consumer Credit Protection Act;

> "[t]he Act requires creditors who deal with consumers to make certain written disclosures concerning finance charges and related aspects of credit transactions (including disclosing an annual percentage rate) and comply with other mandates, and requires advertisements to include certain disclosures."

80.     The Plaintiff confirmed AUTO was only submitting soft credit checks with Jorge Pacheco, Donnie McElroy and Marco Sandoval, multiple times, each person; before during and after the sale. All fail to disclose the true intent. The intent of the credit check is not disclosed on the form the Plaintiff was only able to see one time throughout this entire situation; when Jorge first presented the 7-field simple, non-formal credit application, on March 17, 2018. Failing to adhere to the Act's disclosures requirements.

81.     By stating terms "soft check" and "[G]uaranteed Credit Approval," Auto Mart intentionally lured unsuspecting consumers, just as the Plaintiff, and used their information to conduct 'hard' inquiries, willfully, wantonly, recklessly, negligently, greedily, and unapologetically. As so displayed in the phone call with Sales Manager Donnie, providing direct

statements of soft credit checks, failing to have the model disclosures required by statute, failing

to be "[D]ealers with a Heart."

82.     By and through acts described in Counts One through Seventeen, Defendants have also

violated FCRA.

83.     These facts were material to the Plaintiff and were ought to have been disclosed in equity

and good conscience.

84.     The Plaintiff ignorant of Defendants' fraudulent misrepresentations. The Plaintiff relied

solely and only on the statements provided. The Plaintiff reverified at each opportunity, thus, had

no cause to speculate the truth and accuracy of the representations, as multiple Managers of Auto

Mart USA were involved in the transaction and confirmed the details with the Plaintiff.

85.     Defendants' misrepresentations were done so intently, only to induce the Plaintiff into

purchasing a vehicle from Auto Mart USA. Defendants' actions resulting in the Plaintiffs'

injuries as described herein and damaged in the amount to be proven at trial. Acts and practices

alleged in all Counts also constitute unfair or deceptive acts or practices in violation of section

C.R.S. §§ 6-2-102 & 6-2-103.


**COUNT SEVEN: SUPPORTING FACTS FOR VIOLATIONS OF C.R.S. § 5-3-110
FRAUDULENT MISREPRESENTATIONS IN ADVERTISING**

86.     Defendants falsely presented the following statements to Plaintiff and continue to present

these false statements to hundreds, if not thousands of unsuspecting consumers weekly. AUTO

willfully advertises these messages knowing them to be inaccurate. Common sense and public

policy would conclude, a consumer shopping at Auto Mart, will believe Auto Mart will provide

the consumer with the benefit of, ", [C]redit Approval Guaranteed.," when, "[A]sk[ed] About." In the case of the Plaintiff, this advertisement is not accurate, the Plaintiff was not approved, even considering a lender, Premier Members Credit Union approved the Plaintiffs' credit application submitted via AUTO. Even after asking and depending on the Guaranteed Approval of Plaintiffs' credit.

87.    Defendants have a permanent sign, which resides on the corner of their property. The message that is seen by thousands of drivers daily, and was seen by the Plaintiff, prior to shopping at AUTO, states, "[A]sk About Our Credit Approval Guaranteed;" caused the Plaintiff to inquire about vehicles at Auto Mart USA.

88.    "[A]sk About Our Credit Approval Guaranteed," can be seen in multiple locations within the physical business location. This message at the entrance of their business, on busy Havana Street, on envelopes, cards and fliers, as well as, on the Defendants' website. The flap of the purchase envelope purposely covers the portion of the advertisement that says "[A]sk About Our," but clearly and conspicuously shows the "[C]redit Approval Guaranteed," proving further malicious intent. This 'Guaranteed' message is seen by thousands of drivers daily, and was seen by the Plaintiff before contacting AUTO, fails to state not everyone is approved. There are no disclaimers on any of the various locations where the message is advertised, advising the consumer or the Plaintiff, of this caveat. AUTO's intent is to lure as many people through the doors as possible. The Defendants do not have disclaimers conspicuously posted anywhere, on the premises, the sign itself, consumer area on the property, in the sales room or the entire website, http://www.denverautomart.com.

89.     Additionally, almost all of the verbiage contained on the "[A]pprove My Rig," web page, is full of false promises and advertisements, http://www.denverautomart.com/approve-my-rig.htm. (1) Approved Sign; (2) "[Y]es you can buy a car regardless of your past;" (3) ", [g]et you approved;" (4) "[G]etting approved for that dream car has never been so easy with the best special finance team in Colorado;" (5) "[H]ere, we always treat you like family and get you approved quick and painless;" (6) "[W]e offer all of our customers the Auto Mart Package, including a 90 day, 3,000 mile protection plan, no matter your situation;" and (7) "[C]ome and see why we are the most trusted Dealer in Aurora Denver, CO."

90.     The verbiage on the "[A]pprove My Rig," web page, is full of false promises and advertisements, for these reasons: (1) the Plaintiff did not get approved and the 'Approved' sign on the webpage does not contain any conspicuously posted disclaimers or notifications about qualification; (2) The Plaintiff was unable to buy a car due to her past, as so indicated by the Defendants in the denial letter sent to the Plaintiff on April 06, 2018; (3) the Plaintiff did not get approved; (4) the Plaintiff did not get approved for the dream car, thus the finance team cannot be special; (5) the Plaintiffs' experience was painful and the Plaintiff was not approved; (6) the Plaintiff was never offered the 90 day, 3,000 mile protection plan; and (7) the Plaintiff does not trust the salesmen at AUTO.  All of the statements printed on this public webpage as promises, are intentionally false, misrepresentations being sold to countless unsuspecting consumers.

91.     Defendants intently use the word 'Guaranteed' and not 'Guarantee' as to falsely communicate to all consumers and the Plaintiff that the credit approval is in fact Guaranteed and not that AUTO possesses a Guarantee policy.

92.     Defendants are not "[d]ealers with a heart," as evident by the actions described herein.

93.     Restatement of ¶¶ 82-85.


**COUNT SIXTEEN: SUPPORTING FACTS FOR VIOLATIONS OF COLORADO UNIFORM COMMERICERIAL CODE: C.R.S. § 4-5-109(a) AND C.R.S. § 4-1-304: THROUGH FRAUDULENT CONCEALMENT OF MATERIAL FACTS; MISREPRESENTATIONS OF TERM AND CONDITIONS OF SALE; NEGLIGENT MISREPRESENTATIONS OF THE TERMS AND CONDITIONS; ENGAGING IN DECEPTIVE ACTS; THEREBY VIOLATING OBLIGATION TO GOOD-FAITH; DENYING RIGHT TO EQUAL CREDIT OPPORTUNITY; AND FAILING TO PROVIDE ACCESS TO COPIES OF DOCUMENTS.**

### iii.     Violations of C.R.S. § 4-5-109(a), Fraud & Forgery

94.     Pursuant to C.R.S. § 4-5-109(a),

> "[I]f a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant:"

95.     Defendants exhibited multiple deceptive and fraudulent actions throughout the sales process, return process and every interaction with the Plaintiff since. AUTO denied the credit application of the Plaintiff, all the while, one of the ten lenders actually approved the Plaintiffs' application. Defendants have a permanent sign, which resides at the entrance of their business, on busy Havana Street. The message that is seen by thousands of drivers daily, and that was seen by the Plaintiff, states, "[A]sk About Our Credit Approval Guaranteed." This was not only deceptive, but unfair.

96.     "[A]sk About Our Credit Approval Guaranteed," can be seen in multiple locations within the physical business location, on envelopes, cards and fliers, as well as, on the Defendants' website. There are no disclaimers on any of the various locations, advising the consumer or the

Plaintiff that their credit may not be accepted. The intent is to lure as many people through the doors as possible.

97.    The Plaintiff was lured before stepping foot onto the AUTO location, 835 S Havana St, Aurora, CO 80012. The Defendants knowingly listed a vehicle online that had salvaged title, which prompted the Plaintiff to contact the business. Barring the ad for the salvaged title and having "[A]sk[ed] About Our Credit Approval Guaranteed," the Plaintiff would have never contacted Auto Mart USA.

98.    Two possibly three salesmen made contact with the Plaintiff, prior to the Plaintiff travelling to AUTO, and willfully omitted legally required to disclose salvage information, in violation of 16 CFR 455.1(a)(1). Common sense states when the Plaintiff stated the vehicle of interest, the salesmen would have located the vehicle for two reasons: (1) ensuring the vehicle had not been sold and (2) ensuring vehicle was eligible for sale.

98.    Upon arriving at the location, Jorge did not disclose the salvaged title immediately. Jorge deceptively waited until the Plaintiffs' personal information from check stubs, bank records, current auto loan and utility bill, had been entered into AUTO's system, before disclosing the salvaged title, in violation of 16 CFR 455.1(a)(2)-(3).

100.    Jorge promised the Plaintiff a 17-month warranty on the 2013 Dodge Journey. Once Jorge realized the 2013 Dodge Journey did not have a warranty, instead of the salesman acting in good faith, in accordance with law, Jorge acts deceptively, by failing to promptly disclose the change in terms of agreement, as the contract was formed on this promise. Jorge has the Plaintiff continue signing all other paperwork and pawns the removal of the warranty, from the contract, to the Finance Manager, Marco Sandoval.

101.    Marco exhibits the same behavior and attempts to force the Plaintiff into signing documentation which opposes the statement of warranty. Once the warranty has been re-confirmed by Steve (Manager), Marco goes on to deny the Plaintiff the right of everything in writing. Marco does not want to write the 12-month warranty, to which AUTO is the responsible party, on the Plaintiffs' document entitled, 'You Owe, We Owe.' Marco relents after several minutes of stern rebuttals from the Plaintiff.

102.    Throughout the sale, the return of the vehicle, the pickup of funds and since, the Plaintiff has confirmed with multiple representatives of AUTO, only soft credit checks were run. The Plaintiff relied heavily upon this promise, as she did not want her credit impaired. On several different days, the same statement can be heard, soft credit checks. The Plaintiff recorded a call with Sales Manager, Donnie, in which Donnie states, multiple times, soft credit check. When the Plaintiff requests to have the soft credit check policy in writing, Donnie states he cannot put anything in writing. Anything in writing, needs to come from the Finance Manager. Plaintiff asks for the Finance Manager, after around twenty minutes of holding, the Plaintiff ends the call. Multiple Managers of a business being unwilling to make the same statement in writing, proves the knowledge the verbal statement is inaccurate.

103.    Checking 'NO' on the adverse action letter of denial sent to the Plaintiff on or about April 06, 2018, the Defendants' intentionally intended to continue deceptively communicating their use of the Plaintiffs' consumer credit report. The decision to mark 'NO' was also made, to intentionally support the fictitious soft credit check statements, by multiple licensed salesmen of Auto Mart.

104.    Defendants fail to provide the Plaintiff a copy of the Window Form, upon completion of the sale, in violation of 16 CFR 455.3(a), thereby in violation of 16 CFR 455.3(b).

105.    Restatement of ¶¶ 82-85.

### iv.    Violations of C.R.S. § 4-1-304, Obligation of Good Faith

106.    Other reasonable automobile dealers within the state of Colorado could not operate a business within the color of the law, and operate in the same manner as the Defendants, Auto Mart USA operated with the Plaintiff in this case. The Defendants started the transaction in bad faith with the understanding of communicating deceitful messages to consumers, absent good faith.

107.    By and through acts described in all Counts and Paragraphs, Defendants have failed to act in good-faith.

### COUNT TWENTY: SUPPORTING FACTS FOR VIOLATIONS OF 15 § U.S.C. 1638(a)(1) 1638(b)(1) PART B – CREDIT TRANSACTIONS

108.    Defendants failed to accurately identify the six creditors the Plaintiffs' fictitious authorization intently misrepresented to the creditors by the AUTO representative. Defendants held not the authority to pass the Plaintiffs' consumer information to any creditors. Further, Defendants website did not contain any disclosures and did not correctly reflect the terms of the legal obligations of each party. AUTO now claims internal financing approved, yet did not state any estimate of obligation, in any disclosure posted on the website.