Tiffany Grays vs.
Auto Mart USA, LLC, et al.

**Exhibit 33**

30(b)(6) Deposition of Auto Mart (Ramirez)
October 04, 2019

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No.  18-CV-01761-MSK-NYW
 3      _____

 4      TIFFANY GRAYS,

 5              Plaintiff,

 6      vs.

 7      AUTO MART USA, LLC; JORGE PACHECO;
        AUTO MART USA2; DANIEL RAMIREZ,
 8      JB OVALLE; DONNIE McELROY; MARCO SANDOVAL;
        AUTO MART; JAY BARBER,
 9
                Defendants.
10      _____

11

12           30(b)(6) DEPOSITION OF AUTO MART USA, LLC,

13      AUTO MART USA2, and AUTO MART by DANIEL M. RAMIREZ, JR.

14

15                      October 4, 2019

16      _____

17      APPEARANCES:

18      ON BEHALF OF THE PLAINTIFF:
                TIFFANY GRAYS, Pro Se
19              P.O. Box 472322
                Aurora, Colorado  80047
20              Phone:  720-623-1883
                Email:  legalgrays@gmail.com
21
        ON BEHALF OF THE DEFENDANTS:
22              MICHAEL G. McKINNON, ESQ.
                Law Office of Michael G. McKinnon
23              5984 South Prince Street, Suite 100
                Littleton, Colorado  80120
24              Phone:  303-795-2526
                Email:  mgmckinnon@msn.com
25
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

30(b)(6) Deposition of Auto Mart (Ramirez)
October 04, 2019

Page 73

```
 1              A.   Absolutely.

 2              Q.   Did you also take that training?

 3              A.   Yes, I did.

 4              Q.   And what do you understand to be the

 5    difference between a  hard inquiry  as it relates to consumer

 6    credit reports and a  soft inquiry  as a relates to consumer

 7    credit reports?

 8              A.   That is not in that material.

 9              Q.   So you're stating that you have no knowledge

10    of the types of  inquiries  performed against consumer credit

11    reports?

12              A.   I didn't say that.

13              Q.   What is your knowledge of the  inquiries  that

14    can be performed against consumer credit reports?

15              MR. McKINNON:  Objection as to form.

16              A.   When we check a consumer's credit, we obtain

17    the information from the consumer, obtain authorization to

18    inquire as to their credit, we transmit that to the credit

19    bureau, they produce a credit report.  When we do that,

20    there is a record of it in our credit report.  That's my

21    understanding of how a credit report works.

22              Q.   (By Ms. Grays)  The question asked was about

23    your understanding of inquiries against credit reports, not

24    how a credit report --

25              A.   Okay.
```

Tiffany Grays vs.                                          30(b)(6) Deposition of Auto Mart (Ramirez)
Auto Mart USA, LLC, et al.                                                      October 04, 2019

Page 74

 1          Q.   -- works?

 2          A.   Can you explain what you -- what you're

 3    asking?

 4               MR. McKINNON:  Object to form.

 5          Q.   (By Ms. Grays)  Do you have knowledge of what

 6    a hard inquiry is on a consumer credit report?

 7               MR. McKINNON:  Objection to form.

 8               Do you know what the term "hard inquiry" is?

 9               THE DEPONENT:  No.

10          Q.   (By Ms. Grays)  Have you been in the

11    automobile sales industry for 20 -- over 20 years?

12          A.   Yes.

13          Q.   And during your 20 years, you've not

14    encountered the term hard inquiry?

15          A.   The only kind of inquiry we do is what I

16    described.

17          Q.   How does AutoMart define guaranteed?

18               MR. McKINNON:  Objection as to form.  If you

19    know.

20          A.   There's a dictionary definition.  AutoMart

21    doesn't produce its own dictionary.

22          Q.   (By Ms. Grays)  According to the dictionary,

23    guarantee is a promise or assurance, especially one in

24    writing, that something is of specified quality, content,

25    benefit, et cetera, or that it will perform satisfactorily

Page 1

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-01761-MSK-NYW

----------------------------------------------------------

DEPOSITION OF:  DANIEL RAMIREZ
                October 24, 2019

----------------------------------------------------------

TIFFANY GRAYS, pro se,

        Plaintiff,

vs.

AUTO MART USA, LLC; JORGE PACHECO;
AUTO MART USA2; DANIEL RAMIREZ; JB OVALLE;
DONNIE McELROY; MARCO SANDOVAL; AUTO MART;
JAY BARBER,

        Defendants.
----------------------------------------------------------

        PURSUANT TO NOTICE AND AGREEMENT, the
deposition of DANIEL RAMIREZ, was taken on behalf of the
Plaintiff at 1298 Peoria Street, Aurora, Colorado, on
October 24, 2019, at 2:58 p.m.,  before Linda L.
Frizzell, Registered Professional Reporter and Notary
Public within Colorado.

Tiffany Grays, Pro se                                    DANIEL RAMIREZ
Auto Mart USA, LLC, et al.                            October 24, 2019

Page 69

1   print it out.  I mean, I'd probably find it if it's in

2   there.  But it looks like our printer.  I mean, it's

3   photocopied.  I don't know, exactly where it came from or

4   how it came to be in the file, but --

5        Q.   When you says, "it looks like our printer"?

6        A.   It looks like it's a printed document and we use

7   printers.  I mean, if somebody told me it was printed at

8   our place, I would probably believe it since it's in our

9   file.  I assume we printed it, but I don't know who or

10  when or why.

11       Q.   Do you understand what a hard inquiry is?

12       A.   No.

13       Q.   Do you understand what a soft inquiry is?

14       A.   No.

15       Q.   Would you expect that an application for credit,

16  which had spaces for signatures, would be signed?

17       A.   It depends on -- I mean, they -- I guess.  I

18  mean, I don't -- I don't know the context.  But --

19       Q.   Earlier you stated that you were in charge of

20  compliance?

21       A.   Yes.

22       Q.   Can you elaborate on what compliance you're in

23  charge of?

24       A.   Trying generally to comply with all the rules

25  and regulations that govern car dealerships.

Tiffany Grays, Pro se                                    DANIEL RAMIREZ
Auto Mart USA, LLC, et al.                               October 24, 2019

```
                                                          Page 70
 1        Q.  What does generally comply mean?
 2        A.  Well, there are state, federal, local.  There's
 3   human resource type.  There's workers' comp.  I mean,
 4   there is a slew of regulations.
 5        Q.  Uh-huh.
 6        A.  And we try and keep them straight, and try to be
 7   in compliance as best we can.
 8        Q.  When you say "we," who's in charge of
 9   compliance?
10        A.  I am.
11        Q.  Are you also in charge of consumer credit
12   compliance?
13        A.  We don't have a specific division of consumer
14   credit, but it falls under the purview of compliance,
15   so...  I guess so.
16        Q.  Is that why you were the one who suggested the
17   change in procedure regarding credit applications?
18        A.  Yeah.  It came to my attention when I responded
19   to your attorney's letter that you had, in fact,
20   authorized us to pull your credit, but there was no copy
21   of a credit application in your file.  That a credit
22   application would have been a good thing to have in your
23   file.  So I recommended that we start printing the credit
24   applications and having the customer sign them, and put
25   them it file.
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Donnie H. McElroy
October 04, 2019

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No.  18-CV-01761-MSK-NYW
 3      ─────────────────────────────────────────────────

 4      TIFFANY GRAYS,

 5              Plaintiff,

 6      vs.

 7      AUTO MART USA, LLC; JORGE PACHECO;
        AUTO MART USA2; DANIEL RAMIREZ,
 8      JB OVALLE; DONNIE McELROY; MARCO SANDOVAL;
        AUTO MART; JAY BARBER,
 9
                Defendants.
10      ─────────────────────────────────────────────────

11              DEPOSITION OF DONNIE H. McELROY

12                   October 4, 2019

13      ─────────────────────────────────────────────────

14      APPEARANCES:

15      ON BEHALF OF THE PLAINTIFF:
                TIFFANY GRAYS, Pro Se
16              P.O. Box 472322
                Aurora, Colorado  80047
17              Phone:  720-623-1883
                Email:  legalgrays@gmail.com
18
        ON BEHALF OF THE DEFENDANTS:
19              MICHAEL G. McKINNON, ESQ.
                Law Office of Michael G. McKinnon
20              5984 South Prince Street, Suite 100
                Littleton, Colorado  80120
21              Phone:  303-795-2526
                Email:  mgmckinnon@msn.com
22

23

24

25
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Donnie H. McElroy
October 04, 2019

Page 41

 1   signature on it.  If I'm filling something out, I sign it.

 2          Q.   All right.  Thank you for that.

 3               After the call that you made to the Plaintiff

 4   to bring -- advising that financing was not going to be an

 5   option, did the vehicle or did the Plaintiff return the

 6   vehicle?

 7          A.   I don't know.  I wasn't there.  I don't

 8   remember.  And who is the Plaintiff?  Tiffany Grays?

 9          Q.   Yes.

10          A.   I don't remember.

11          Q.   Okay.  Did you at any time represent to the

12   Plaintiff that a soft inquiry was going to be performed

13   against her credit report?

14          A.   You've got to elaborate more.  I'm not

15   understanding.

16          Q.   Okay.  Do you know what a soft inquiry is?

17          A.   I have somewhat of an idea now but on that

18   day I didn't, and you very well know it.

19          Q.   Can you explain to me what your current

20   knowledge of soft inquiry is when it comes to --

21          A.   I can't because -- because I'm not in

22   complete understanding of it so...

23          Q.   I'm asking for what you understand it to be.

24          A.   My understanding of it -- I don't know.

25          Q.   You said that you have more now than you did

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Donnie H. McElroy
October 04, 2019

Page 42

```
 1   later but you don't know?
 2          A.   Because I really don't know.  I -- I -- I
 3   know it has something to do with hitting your credit and the
 4   amount of points that come off of your credit for the time
 5   that you are looking.
 6          Q.   In the 20 years you've been selling vehicles,
 7   you've never had to or been made aware of the different
 8   inquires that can be performed against consumer credit
 9   reports?
10          A.   And let me correct you.  I've been selling
11   cars since 1990.  And on that day, I had no idea, and you
12   know it.  And you directed me to go to the sales tower.  You
13   directed me.
14          Q.   And what did you go to the sales tower and
15   do?
16          A.   Well, you have to give me more information
17   and then I will be able to remember what happened and how it
18   completely happened.
19          Q.   You seem to be very rememberable when it
20   comes to things I asked you to do and very misinformed when
21   it comes to things you've been professionally trained on
22   so --
23          A.   Who are you to tell me what training I have.
24   You know I ain't no --
25                MR. McKINNON:  Objection.  Argumentative.
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Donnie H. McElroy
October 04, 2019

Page 43

1    Q.    (By Ms. Grays)  So did you ever tell the

2  Plaintiff that AutoMart USA did or only was -- or was going

3  to perform a soft inquiry against the Plaintiff's consumer

4  credit report?  Please speak verbally.

5    A.    I'm thinking, and I'm shaking my head left to

6  right.  Now I'm going to speak verbally.  No.

7    Q.    Under what circumstances is AutoMart USA

8  allowed to conduct inquiries against consumer credit

9  reports?

10    MR. McKINNON:  Objection.  Form and

11  foundation, if you know.

12    A.    That's above my pay grade.

13    Q.    (By Ms. Grays)  What documentation is used by

14  salesmen to conduct inquiries against consumer credit

15  reports?

16    MR. McKINNON:  Same objection.  Form and

17  foundation.

18    A.    I'm not understanding the question.

19    Q.    (By Ms. Grays)  What documents does AutoMart

20  USA use to allow consumers who come in to have their credit

21  reports pulled?

22    A.    I'm just going to say this out loud so I can

23  make sure I understood what you said.  What documents are

24  allowed to AutoMart --

25    Q.    What documents does AutoMart --

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Jorge Pacheco
October 04, 2019

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No.  18-CV-01761-MSK-NYW
 3      _____

 4      TIFFANY GRAYS,

 5              Plaintiff,

 6      vs.

 7      AUTO MART USA, LLC; JORGE PACHECO;
        AUTO MART USA2; DANIEL RAMIREZ,
 8      JB OVALLE; DONNIE McELROY; MARCO SANDOVAL;
        AUTO MART; JAY BARBER,
 9
                Defendants.
10      _____

11              DEPOSITION OF JORGE PACHECO

12                  October 4, 2019

13      _____

14      APPEARANCES:

15      ON BEHALF OF THE PLAINTIFF:
                TIFFANY GRAYS, Pro Se
16              P.O. Box 472322
                Aurora, Colorado  80047
17              Phone:  720-623-1883
                Email:  legalgrays@gmail.com
18
        ON BEHALF OF THE DEFENDANTS:
19              MICHAEL G. McKINNON, ESQ.
                Law Office of Michael G. McKinnon
20              5984 South Prince Street, Suite 100
                Littleton, Colorado  80120
21              Phone:  303-795-2526
                Email:  mgmckinnon@msn.com
22

23

24

25
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Jorge Pacheco
October 04, 2019

Page 24

```
 1                    THE COURT REPORTER:  I'm sorry.  Did you
 2      answer?
 3                    THE DEPONENT:  No.
 4           Q.   (By Ms. Grays)  Do you recall signing any
 5      documents on behalf of AutoMart USA indicating AutoMart was
 6      selling a vehicle to the Plaintiff on or about March 17,
 7      2018?
 8           A.   I don't recall.
 9           Q.   So as a salesperson here in Colorado and
10      having been licensed by the Colorado Department of Revenue
11      Auto Industry Division, what is your understanding of a soft
12      inquiry in relation to consumer credit reports?
13                    MR. McKINNON:  Objection.  Form and
14      foundation.
15           A.   I don't understand.
16           Q.   (By Ms. Grays)  Did you receive consumer
17      credit training as a part of your training to get licensed
18      to sell vehicles in this state?
19           A.   It's not part of -- that's not part of it.
20           Q.   That was not part of the training you
21      received.
22                    What is your understanding of a consumer
23      credit report?
24           A.   I don't really understand that question.
25      Sorry.
```

Tiffany Grays vs.
Auto Mart USA, LLC, et al.

Deposition of Jorge Pacheco
October 04, 2019

Page 25

1      Q.    What do you understand a consumer credit

2   report to be?

3          A.    I do not know.

4      Q.    You were working in selling motor vehicles,

5   financing consumers, pulling their credit, and you are

6   unaware or have no knowledge of what a consumer credit

7   report is?

8              MR. McKINNON:   Objection.   Form and

9   foundation.   Compound question.

10         A.    No.

11     Q.    (By Ms. Grays)   You stated you've been

12  selling vehicles for six years in this state; is that

13  correct?

14         A.    Correct.

15     Q.    In selling vehicles, you do not provide your

16  customers disclosures which are required by people who are

17  conducting inquiries against consumer credit reports?

18             MR. McKINNON:   Objection as to form.

19         A.    Don't understand.

20     Q.    (By Ms. Grays)   If you do not understand what

21  a consumer report is, how did you properly advise your

22  consumers when attempting to run their credit?

23             MR. McKINNON:   Objection to form and

24  foundation.

25         A.    That they give us permission when they sign

Page 1

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-01761-MSK-NYW

----------------------------------------------------------

DEPOSITION OF:  MARCO ANTONIO SANDOVAL
               October 24, 2019

----------------------------------------------------------

TIFFANY GRAYS, pro se,

        Plaintiff,

vs.

AUTO MART USA, LLC; JORGE PACHECO;
AUTO MART USA2; DANIEL RAMIREZ; JB OVALLE;
DONNIE McELROY; MARCO SANDOVAL; AUTO MART;
JAY BARBER,

        Defendants.
----------------------------------------------------------

        PURSUANT TO NOTICE AND AGREEMENT, the
deposition of MARCO ANTONIO SANDOVAL, was taken on behalf
of the Plaintiff at 1298 Peoria Street, Aurora, Colorado,
on October 24, 2019, at 12:47 p.m., before Linda L.
Frizzell, Registered Professional Reporter and Notary
Public within Colorado.

Tiffany Grays, Pro se                           MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                       October 24, 2019

Page 59

 1              MS. GRAYS:  -- in its relation to my claims.

 2              MR. McKINNON:  No, it's not.

 3              MS. GRAYS:  But if that's what you want to do --

 4              MR. McKINNON:  You don't understand how it

 5    works.

 6              MS. GRAYS:  -- I'll make a note.

 7              MR. McKINNON:  You -- you have mangled this

 8    entire part of it.

 9              MS. GRAYS:  Uh-huh.  MasterTech.

10         **Q.  (BY MS. GRAYS) So in your years working as a**

11    **salesman, finance manager, general manager, sales**

12    **manager, have you been informed of what an inquiry is**

13    **as it relates to consumer credit report?**

14         A.  Yes.

15         **Q.  What do you understand an inquiry to be?**

16         A.  When somebody pulls your credit, it's going to

17    show as an inquiry on your credit report.

18         **Q.  Do you understand the different types of**

19    **inquiries?**

20         A.  I don't understand your question.

21         **Q.  Do you understand the different types of**

22    **inquiries?**

23         A.  Yes.

24         **Q.  What do you understand those types to be?**

25         A.  They're -- say again.  Let me go back.  I don't

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                      October 24, 2019

---

Page 60

1    understand what you are trying to ask me.

2         Q.  **You answered the question, now you don't**

3    **understand?**

4         A.  Yes, I answered it without understanding it.  I

5    apologize.  Can you repeat it again?

6         Q.  **I asked you the same -- okay.  Do you understand**

7    **the different types of inquiries?**

8         A.  What do you mean "the different types"?

9         Q.  **Do you understand the different types of**

10   **consumer credit inquiries?**

11            MR. McKINNON:  Objection.  Form.

12        A.  What do you mean, "the different types --

13        Q.  **(BY MS. GRAYS) I'm trying to clarify for**

14   **you --**

15            MR. McKINNON:  Maybe ask --

16        Q.  **(BY MS. GRAYS) -- is there more than one type**

17   **of inquiry of which you are aware?**

18        A.  The only inquiry we -- I've ever dealt with is

19   what they call an inquiry.  A hard inquiry.  And it --

20   you pull credit and it shows our credit report.

21        Q.  **When you say it shows on your credit report,**

22   **what do you remember mean?**

23        A.  It shows on the list of inquiries on the bottom

24   of your credit report.

25        Q.  **Okay.  And you said hard inquiries?**

---

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                        October 24, 2019

---

Page 61

 1      A.   Uh-huh.

 2      **Q.   What do you understand a hard inquiry to be?**

 3      A.   That -- I just told you, that they're going to

 4   pull your credit and it's going to show as a list of

 5   inquiries on your -- on the last page of your credit

 6   report.

 7      **Q.   Do you understand that to have any effect on the**

 8   **credit report and/or the score assigned to that credit**

 9   **report?**

10      A.   Do I understand that?  No.

11      **Q.   So are you stating, as a licensed automobile**

12   **salesman in Colorado, having been in sales of automobiles**

13   **for over a decade, you have no knowledge or understanding**

14   **of the impact to consumer credit reports after running a**

15   **hard inquiry?**

16           MR. McKINNON:  Object to the form.

17      A.   There's -- I just don't know how to answer this

18   question.  It's -- it's -- there's so many stories out

19   there.  That, okay, you pull your credit, it hurts your

20   credit; you pull the credit, it doesn't hurt your credit.

21   I don't know.

22      **Q.   (BY MS. GRAYS) I'm understanding -- I'm only**

23   **asking what you're understanding of that is be.**

24      A.   I don't have one.

25      **Q.   So in selling vehicles and running consumer**

---

Tiffany Grays, Pro se                         MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                        October 24, 2019

Page 62

 1    **credit, you don't have an understanding of what a hard**
 2    **inquiry is and how that inquiry impacts consumer credit**
 3    **reports?**
 4        A.   That's two different questions.
 5        Q.   **Are you stating that you do not have an**
 6    **understanding of how a hard inquiry impacts consumer**
 7    **credit reports as a person who's been in automobile sales**
 8    **for over ten years?**
 9            MR. McKINNON:   Object to the form.
10        A.   I don't know how to answer that question.
11        Q.   **(BY MS. GRAYS) In your ten years of selling**
12    **automobiles, have you ever been asked the difference**
13    **between a hard inquiry and a soft inquiry?**
14        A.   No.
15        Q.   **In your ten year -- or in the last six years of**
16    **your employment at Auto Mart USA, do you believe that you**
17    **performed hard inquiries against consumer credit reports?**
18        A.   We just do inquiries.
19        Q.   **You stated hard.**
20        A.   Uh-huh.
21        Q.   **So what did you mean when you said "hard"?**
22        A.   That's just a term that I've heard people use as
23    an inquiry, that's it.
24        Q.   **So you repeat terms that you've heard people use**
25    **not knowing the definition?**

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                          October 24, 2019

                                                              Page 63

  1       A.  Maybe.

  2       Q.  I'm asking, Is that what you're doing in this

  3   case?

  4       A.  I don't know.

  5       Q.  You don't know if you repeated a term that you

  6   do not understand?

  7       A.  Maybe I did.

  8       Q.  Maybe you did?

  9       A.  Uh-huh.

 10       Q.  Okay.  As a sales manager, is it your job to

 11   inform your salesman of proper -- of -- is it your job to

 12   ensure that your salesmen are adhering to state and

 13   federal laws in relation to the sales of automobiles?

 14       A.  In some way, yeah.

 15       Q.  And what way is it and what way are you not?

 16       A.  I mean, the -- what I mean -- in some ways to a

 17   certain extent, that's why they take a sales license

 18   they should know all that.  That's why they have a

 19   license.

 20       Q.  Are you stating that you do not have a

 21   responsibility to ensure that they adhere to laws

 22   relation to the sales of automobiles?

 23           MR. McKINNON:  Objection.  Misstates his

 24   statement.

 25       A.  I didn't state that.

Tiffany Grays, Pro se                      MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                    October 24, 2019

```
                                                    Page 81
 1        A.   A person who can sell cars makes them a good

 2   salesman.

 3        Q.   No matter how they sell the car?

 4        A.   No, of --

 5             MR. McKINNON:  Objection as to form.  Misstates

 6   testimony.

 7        A.   -- course not.

 8        Q.   (BY MS. GRAYS) So I asked, What makes a good

 9   salesman, if there's other things that makes --

10        A.   A person who can sell cars, following rules and

11   regulations.

12        Q.   What would you state if one of your salesmen

13   advised a consumer that Auto Mart was only going to

14   perform a soft inquiry against their credit?

15        A.   I wouldn't even know what they're talking about.

16   We don't do soft inquiries.

17        Q.   So that would not be something that Auto Mart

18   authorized its --

19        A.   No.

20        Q.   -- salesmen to state?

21        A.   No.

22        Q.   Would a salesman be reprimanded for advising a

23   customer of that?

24        A.   Of doing what?

25        Q.   If a salesman advised a consumer that Auto Mart
```

Tiffany Grays, Pro se                         MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                    October 24, 2019

Page 82

 1   **was only performing a soft inquiry, would you reprimand**

 2   **that --**

 3        A.  I don't see why we would do that.  We don't --

 4   there's --

 5        **Q.  I'm asking as the boss --**

 6        A.  Okay.

 7        **Q.  -- would you reprimand a salesman?**

 8        A.  Yes.

 9        **Q.  And how would you do that?**

10        A.  I would take it up to the owner of the company,

11   and ask him how he wants me to handle it:  Write-up, get

12   terminated.  I don't know what the consequences would be.

13        **Q.  About how many MasterTech agreements have you**

14   **personally given away to consumers for free?**

15        A.  I don't have that information.  I don't know how

16   many.

17        **Q.  If a vehicle needed to be returned, how are the**

18   **salesmen supposed to notify consumers?**

19        A.  If a vehicle needed to be returned?

20        **Q.  Uh-huh.**

21        A.  How would a salesman --

22        **Q.  Uh-huh.**

23        A.  -- more than likely, the manager would call.

24        **Q.  What position is Jorge Pacheco?**

25        A.  He's no longer with the company.

Tiffany Grays, Pro se                        MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                        October 24, 2019

Page 83

1        Q.  When he was with the company, what was his
2   position?
3        A.  Sales.
4        Q.  Were you in charge of Jorge Pacheco?
5        A.  Yes.
6        Q.  What position is Donnie McElroy?
7        A.  Sales.
8        Q.  And were you in charge of Donnie?
9        A.  Uh-huh.
10       Q.  Do you understand the legal requirements for
11   posting of a vehicle with a salvaged title online?
12       A.  I don't post vehicles.
13       Q.  Do you understand the requirements for
14   attempting to sell a vehicle with a salvaged title?
15       A.  To sell it?
16       Q.  Uh-huh.
17       A.  Yes.
18       Q.  What do you understand those requirements to be?
19       A.  It has to be disclosed verbally and in writing.
20       Q.  Who's in charge of buying or purchasing vehicles
21   for Auto Mart?
22       A.  There's just not one person.
23       Q.  Okay.  Who?
24       A.  I buy cars sometimes.  The owner of the company
25   buys cars sometimes.

Tiffany Grays, Pro se                         MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                    October 24, 2019

Page 84

1        **Q.   So just you two?**

2        A.   Hm.  Right now, yes.

3        **Q.   In 2018, who was responsible for purchasing**

4    **vehicles?**

5        A.   I don't remember.  I don't have that

6    information.

7        **Q.   Do you know what an adverse action letter is?**

8        A.   Yes.

9        **Q.   What do you understand an adverse action letter**

10   **to be?**

11       A.   It's a letter that's sent to the customer

12   letting them know why their financing was declined, or it

13   was counteroffered or -- you know.

14       **Q.   Have you ever sent one of those adverse action**

15   **letters?**

16       A.   Me, not personally.  Now our automated system

17   does.

18       **Q.   Based on your signature being upon multiple**

19   **documents in relation to my -- Tiffany Grays, the**

20   **plaintiff's application, loan documents, and agreements**

21   **between myself and Auto Mart, would you say that you were**

22   **the finance manager in relation to these -- to this**

23   **transaction?**

24       A.   I don't remember.

25       **Q.   Given that you signed the sales contract --**

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                      October 24, 2019

```
                                                        Page 85
 1        A.   Then probably -- oh, if my signature is on them,
 2   probably, yeah.
 3        Q.   So you were acting as the finance manager at
 4   that time?
 5        A.   Uh-huh.
 6        Q.   If you were advised that the sale had been
 7   performed under the guise of a soft inquiry being
 8   conducted, what would do you to correct that?
 9             MR. McKINNON:  Objection as to the form.
10        A.   We don't do soft inquiries.
11        Q.   (BY MS. GRAYS) So if you were advised that
12   that was told to a consumer who, then, allowed you to
13   perform that inquiry, based on it being a soft inquiry
14   but it was not, how would you correct that?
15        A.   I would -- I don't know how I would do it.
16   Because we don't do that.
17        Q.   Did you state at any time or represent to the
18   plaintiff that Auto Mart was conducting only soft
19   inquiries against her consumer credit report?
20        A.   No.
21        Q.   What do you understand a soft inquiry to be?
22             MR. McKINNON:  Objection.  It's been asked and
23   answered.
24             MS. GRAYS:  No, I did not ask him that.
25             THE DEPONENT:  You did ask.
```

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                      October 24, 2019

---

                                                         Page 86

 1              MS. GRAYS:  I did not ask --

 2              MR. McKINNON:  Yeah, you did.  Go ahead.

 3         Q.  (BY MS. GRAYS) What do you understand what a

 4    soft inquiry to be?  I only asked about inquires.

 5         A.  I don't -- I don't know because we don't do

 6    them.

 7         Q.  So you have no comprehension of a soft inquiry

 8    is?

 9         A.  I've never dealt with them.

10         Q.  Did you attempt to make the plaintiff sign

11    vehicular sales documents stating that there was no

12    warranty on the 2013 Dodge Journey?

13         A.  I don't remember.

14         Q.  Were you consulted at any time during the sale

15    of the 2013 Dodge Journey to the plaintiff?

16              MR. McKINNON:  Objection to form.

17         A.  Say that again.

18         Q.  (BY MS. GRAYS) Were you consulted at any time

19    during the sale of the 2013 Dodge Journey to the

20    plaintiff?

21         A.  What do you mean was I "consulted"?

22         Q.  Were you asked any questions? were you asked for

23    direction? were you consulted by any of your sales staff

24    during that sale?

25         A.  I don't remember.

---

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                         October 24, 2019

                                                              Page 87

 1        **Q.   What do you understand The Dealer with a Heart**
 2   **to mean?**
 3        A.   Dealership that takes care of the customer.
 4        **Q.   And when you say, "takes care of the customer,"**
 5   **what do you mean by that?**
 6        A.   That we will try very hard to meet all their
 7   needs.
 8        **Q.   Does it also mean you will conduct lawful**
 9   **actions?**
10        A.   Lawful?
11        **Q.   Uh-huh.**
12        A.   Like, legal actions?  Yes.
13        **Q.   If you are not conducting legal actions, then**
14   **would you still consider yourself to be The Dealer with a**
15   **Heart?**
16        MR. McKINNON:  Objection as to form and
17   foundation.  If you can answer it.
18        A.   Say that again.
19        **Q.   (BY MS. GRAYS) If you were not conducting**
20   **lawful actions, would you consider yourself to be The**
21   **Dealer with a Heart?**
22        A.   I couldn't tell you.  All we do is lawful
23   actions.
24        **Q.   I said "if."**
25        MR. McKINNON:  Objection.

Tiffany Grays, Pro se                          MARCO ANTONIO SANDOVAL
Auto Mart USA, LLC, et al.                      October 24, 2019

Page 88

1        A.   If.  Then I would have to be there to tell you.

2        Q.   (BY MS. GRAYS) So if a salesman represented to

3    a consumer that a soft inquiry was being performed

4    against their credit, but a hard inquiry was, which is

5    unlawful, would you then state that the salesman was

6    The Dealer with a Heart?

7             MR. McKINNON:  Objection.  Calls for a legal

8    conclusion.

9        A.   I've never seen that happen, so I don't know.

10       Q.   (BY MS. GRAYS) If a salesman represented to a

11   customer that a vehicle had a warranty when it did not,

12   would you state that that salesman was being -- or

13   acting as a Dealer with a Heart?

14            MR. McKINNON:  Objection as to form, foundation.

15       A.   Say that again.

16       Q.   (BY MS. GRAYS) If a salesman represented to a

17   consumer that a warranty was on a vehicle when it did

18   not have a warranty, would you say that that salesman

19   was acting in accordance with being a Dealer with a

20   Heart?

21            MR. McKINNON:  Objection as to form and

22   foundation.

23       A.   It depends.  Maybe the salesman made a mistake.

24   I don't know.

25       Q.   (BY MS. GRAYS) And how would you go about