**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01761-MSK-NYW

TIFFANY GRAYS,

       Plaintiff,

v.

AUTO MART USA, LLC,
JORGE PACHECO,
AUTO MART USA2,
DANIEL RAMIREZ,
JB OVALLE,
DONNIE MCELROY,
MARCO SANDOVAL,
AUTO MART,
JAY BARBAR,

       Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
ON PLAINTIFF'S MOTION TO AMEND AND SANCTIONS MOTIONS AND ORDER
ON CERTAIN DISCOVERY MOTIONS**

---

Magistrate Judge Nina Y. Wang

This matter comes before this court on the following outstanding motions filed by Plaintiff:

(1)     Plaintiff's Motion for Leave to File Plaintiff's Third Amended Complaint and Plaintiff's Amended Motion for Summary Judgment ("Plaintiff's Motion to Amend") [#119, filed December 30, 2019];

(2)     Plaintiff's Motion to Compel Defendants' Compliance with Fed. R. Civ. P. 26(e)(1)-(A) ("Plaintiff's Third Motion to Compel") [#128, filed February 6, 2020];

(3)     Plaintiff's Second Motion for Leave to File Third Amended Complaint ("Plaintiff's Second Motion to Amend") [#134, filed February 29, 2020];

(4)     Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) ("Plaintiff's Second Motion for Rule 11 Sanctions") [1] [#135, filed March 2, 2020]; and

(5)     Plaintiff's Second Motion for Sanctions Pursuant to Fed. R. Civ. P. 26, 37, and 28 U.S.C § 1927 ("Plaintiff's Third Motion for Discovery Sanctions") [#136, filed March 2, 2020].

The undersigned considers these Motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated October 10, 2018 [#21], and the Memoranda dated January 2, 2020 [#121], January 22, 2020 [#126], February 12, 2020 [#129], March 2, 2020 [#137], and April 2, 2020 [#144]. Defendants have responded to all these Motions, except for Plaintiff's Third Motion to Compel, and the time for such response has elapsed. On April 2, 2020, Plaintiff filed a combined Reply to Plaintiff's Second Motion for Rule 11 Sanctions and Third Motion for Discovery Sanctions [#145].[2] Upon review of the briefing and the docket, this court concludes that oral argument will not materially assist in the resolution of these matters. Accordingly, having reviewed the Motions, the applicable case law, and being otherwise fully advised of the premises, this court respectfully **RECOMMENDS** that Plaintiff's Motion to Amend be **GRANTED IN PART and DENIED IN PART**, Plaintiff's Second Motion to Amend be **DENIED as moot**, and Plaintiff's Second Motion for Rule 11 Sanctions be **DENIED**, and Plaintiff's Third Motion for Discovery Sanctions be **DENIED**. In addition, this court **DENIES** Plaintiff's Third Motion to Compel.

---

[1] While Plaintiff characterizes this Motion as her second Motion for Sanctions under Fed. R. Civ. P. 26, 37 and 28 U.S.C. 1927, a review of the docket reveals that this is, in fact, Ms. Grays' third Motion for Sanctions under these provisions. *See* [#68; #81; #90; #100].

[2] Because Plaintiff seeks dispositive relief and/or a finding of contempt in conjunction with her Motions for Sanctions, this court proceeds by Recommendation rather by Order.

# BACKGROUND

The court discussed the background of this matter in its prior Order and Recommendation, *see* [#49; #90], and thus this court discusses only those most salient facts to the instant Motions. Plaintiff Tiffany Grays ("Plaintiff" or "Ms. Grays") initiated this action by filing her pro se[3] Complaint on July 10, 2018. *See* [#1]. The Honorable Gordon P. Gallagher granted Plaintiff leave to proceed *in forma pauperis* and directed Plaintiff to file an Amended Complaint. *See* [#4]. Plaintiff filed an Amended Complaint and has since filed a Second Amended Complaint, the operative pleading in this matter. *See* [#16; #16-1].

The Second Amended Complaint raises a host of claims against Defendants Auto Mart USA, LLC (with Auto Mart USA2 and Auto Mart, "the Auto Mart Defendants"), Jorge Pacheco (with Defendants Ramirez, McElroy, Sandoval, and Barber, "the Individual Defendants"), Auto Mart USA2, Daniel Ramirez, JB Ovalle, Donnie McElroy, Marco Sandoval, Auto Mart, Jay Barbar (the Auto Mart Defendants and Individual Defendants collectively, "Defendants"), including violations of state and federal credit and consumer laws as well as various common law claims pursuant to Colorado law. *See* [#16; #49 at 4-7 (detailing Ms. Grays's 20 claims)].

All of Plaintiff's claims arise from her attempt to purchase an automobile from Defendants. Specifically, on or about March 17, 2018, Plaintiff purportedly purchased a Dodge Journey from Defendants, but had to return the vehicle three days later when Defendants informed Ms. Grays that they could not secure financing for the vehicle—this being despite Defendants' "Credit Approval Guaranteed" assurance. *See* [#49 at 2, 3]. According to Ms. Grays, a lender approved

---

[3] Given Ms. Grays's pro se status, this court construes her filings liberally, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but does not act as her advocate and applies the same procedural and substantive law to Ms. Grays as a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

Ms. Grays for a loan on the Dodge Journey but Defendants refused to complete the necessary loan paperwork, allegedly in discrimination to Ms. Grays's race. *See* [*id.* at 4]. Defendants stated they did not submit Ms. Grays's credit application to lenders, but Ms. Grays began receiving letters from lenders indicating Defendants had sought credit on Ms. Grays's behalf. Ms. Grays further contends Defendants sought "hard checks" of her creditworthiness, despite agreeing to run "soft checks," which detrimentally affected her credit score. *See* [*id.* at 4]; *see also* [#16; #16-1].

On October 31, 2018, Defendants moved to compel arbitration of Ms. Grays's claims based on the sales agreement entered between Plaintiff and Defendants for the purchase of the Dodge Journey. *See* [#24]. The presiding judge, the Honorable Marcia S. Krieger, granted the Motion to Compel Arbitration in part, bifurcating Ms. Grays's claims, and compelling arbitration as to claims based on:

> (i) false promises by Auto Mart of "guaranteed credit acceptance" or the like, (ii) the failure of Auto Mart to assign the Sale Contract to a lender, and (iii) any claims that involve Auto Mart's failure to make disclosures or provide documents (including Ms. Grays'[s] Claim 8) that were required to be provided as part of the transaction represented by the Sale Contract.

[#49 at 13-14]. Ms. Grays's remaining claims alleging violations of the Fair Credit Reporting Act ("FCRA") ("Count 1"), violations of the Truth in Lending Act ("TILA") ("Count 2"), fraudulent misrepresentation ("Count 7"), violation of Colo. Rev. Stat. § 4-5-109(a), fraud and forgery ("Count 16"), and violations of 15 U.S.C. §§ 1638(a)(1), (b)(1)(B)[4] "Credit Transaction" ("Count 20") remain pending before the court. *See* [*id.* at 14; #100 at 2-3].

Then, on April 18, 2019, the Parties appeared before the undersigned Magistrate Judge for a Scheduling Conference. *See* [#47]. Relevant here, the Scheduling Order sets the deadline for joinder of parties and amendment of pleadings of June 3, 2019; the discovery deadline for October

---

[4] The statutory citation refers to the TILA but is separately alleged from Count 2.

18, 2019; and the dispositive motion deadline for November 18, 2019. *See* [#48 at 10]. During the discovery period, several disputes arose between the Parties, resulting in both informal Telephonic Discovery Conferences as well as formal motions. *See, e.g.*, [#90; #100; #127 (discussing a partial history of the Parties' discovery disputes)]. This court extended the discovery deadline to October 24, 2019 for the sole purpose of taking certain depositions and the dispositive motions deadline to November 21, 2019, following Plaintiff's request for an extension to complete outstanding depositions. *See* [#96]. On November 21, 2019, Plaintiff filed a Motion for Partial Summary Judgment [#109].

Two months later on December 30, 2019, Plaintiff filed the instant Motion to Amend, seeking leave to file a Third Amended Complaint and to amend her Motion for Partial Summary Judgment.[5] Since then, Plaintiff filed the Third Motion to Compel [#128], the Second Motion to Amend [#134], the Second Motion for Rule 11 Sanctions [#135], and a Third Motion for Discovery Sanctions [#136]. Defendants responded to the Motion to Amend [#122], and Ms. Grays replied [#124]. Defendants did not respond to Plaintiff's Third Motion to Compel but did respond to her Second Motion to Amend [#138], Second Motion for Rule 11 Sanctions [#142], and Third Motion for Discovery Sanctions [#143]. On April 2, 2020, Ms. Grays filed a combined Reply to her Second Motion for Rule 11 Sanctions and Third Motion for Discovery Sanctions. [#145]. This court now turns to the myriad issues presented by these instant motions.

---

[5] Because Judge Krieger has not referred Plaintiff's Motion for Partial Summary Judgment, this Magistrate Judge respectfully RESERVES the issue of whether Plaintiff should be permitted to amend her Motion for Partial Summary Judgment for the presiding judge.

## LEGAL STANDARDS

Though Judge Krieger and the undersigned Magistrate Judge have discussed many of the legal standards applicable to Plaintiff's instant Motions in detail in other Recommendations and Orders, *see, e.g.*, [#90; #100], this court again addresses them herein for the sake of completeness.

## I.      Rules 16(b)(4) and 15(a)

The deadline to amend pleadings has long since passed, and accordingly this court must engage in a two-step analysis in determining whether amendment at this juncture is proper under both Rule 16(b)(4) and Rule 15(a) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).   Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).   "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).   This burden is satisfied, for example, when a party learns of new information in a deposition or the governing law has changed. *Id.*   "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  The party

contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases. *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).

A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (finding an amendment futile because the claim was subject to the statute of limitations); *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (finding an amendment futile for failure to allege all elements of cause of action); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1200 (10th Cir. 2006) (finding an amendment futile because the amended claim would seek relief barred by statute). In considering whether an amendment is futile, courts apply the same standard used to evaluate a claim under Rule 12(b)(6), accepting well-pleaded facts as true and reviewing solely to determine if the Complaint states a plausible claim for relief as amended. *Weingarden v. Rainstorm, Inc.*, No. 09-2530-JWL, 2012 WL 13026753, at *1 (D. Kan. July 12, 2012). The decision to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

## II.     Colorado Revised Statute § 13-21-102

Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages for state law claims. Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Insurance Co.*, 913 P.2d 514, 517 (Colo. 1996).

Pursuant to § 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading and may seek to amend the pleading to add a claim for exemplary damages "only

after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if she establishes prima facie proof of a triable issue. In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages. *See Wollam v. Wright Medical Group, Inc.*, No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying Colo. Rev. Stat. § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condominiums at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action). *See also Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.* ("*Schoolcraft*"), No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim,* 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)).

Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation omitted). As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449 (citation omitted). Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff

has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Id.* (citation omitted).

In reviewing the Motion to Amend, this court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing of fraud, malice, or willful and wanton behavior, not whether she will ultimately prevail. *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

### III.   Rules 26 and 37

***Rule 26(b)(1) Scope of Discovery***.   Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery here.   The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).   In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

This definition of the permissible scope does not include all information "reasonably calculated to lead to admissible evidence."   The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016).   As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Rather, the applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case, though the information sought need not be admissible to

be relevant to a claim or defense. *Id.*; Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1). Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery does not fall within the scope of relevant evidence, or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D.Colo.2004) (citations omitted). But when, as here, the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

*Rule 26(e) Duty to Supplement*. Rule 26(e)(1)(A) allows parties to supplement prior disclosures, in a timely manner, if the prior response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during discovery. Fed. R. Civ. P. 26(e)(1)(A). This duty also extends to document requests. *Id.* The Federal Rules do not define "a timely manner." *Id.*

*Rule 37 Sanctions.* Rule 37(b)(2) provides that a court may sanction a party for failing to obey a court order to provide or permit discovery, which may include both monetary and non-monetary penalties. Fed. R. Civ. P. 37(b)(2). The Rule further provides that instead of, or in addition to, other sanctions delineated, the court may order "the disobedient party … pay the

reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 37(c) of the Federal Rules of Civil Procedure provides that if a party fails to provide information as required by Rule 26, the party is not allowed to use that information unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In considering whether a sanction is appropriate, the court considers whether: (i) the prejudice or surprise to the party entitled to receive the disclosures; (ii) the ability of that party to cure such prejudice; (iii) the extent to which allowing the undisclosed evidence would disrupt the trial; and (iv) the disclosing party's bad faith or willfulness. See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

## IV.   Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure provides:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  "Rule 11 applies at any point that the party advocates a frivolous claim, including at trial," *Hach Co. v. In-Situ, Inc.*, No. 13-CV-02201-CBS, 2016 WL 9725765, at *10 (D. Colo. Nov. 22, 2016); however, the Rule is inapplicable "to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37," Fed. R. Civ. P. 11(d).

The aim of Rule 11 is to deter sanctionable conduct rather than compensate the opposing party, and thus an appropriate sanction under Rule 11 must be tailored to this purpose and may include attorney's fees and other expenses arising from the violation.  *See Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1025 (D. Colo. 2009).  But before a court may impose sanctions under Rule 11, the movant must serve its motion for sanctions on the opposing party under Rule 5 of the Federal Rules of Civil Procedure and may not file the motion with the court if the opposing party withdraws or corrects the alleged infraction within twenty-one days of receipt of the motion.  *See Harrington v. Aerogelic Ballooning, LLC*, No. 18-CV-02023-MSK-NYW, 2019 WL 2613334, at *4 (D. Colo. Apr. 25, 2019) (citing Fed. R. Civ. P. 11(c)(2)).  Failure to abide by Rule 11(c)(2)'s safe harbor provision is reason alone to deny a motion for sanctions.  *See Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 676-78 (D. Colo. 2014).

## V.    28 U.S.C. § 1927

28 U.S.C. § 1927 "targets the vexatious and unreasonable multiplication of proceedings," and imposes sanctions on attorneys for certain misconduct.  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006).  Specifically, § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Whether to impose sanctions under § 1927 is a decision the court does not take

lightly.  *See DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1345 (10th Cir. 2009).

Sanctions under § 1927 may be appropriate when: "counsel repeatedly refers to facts in the record

that simply are not there"; raises issues already addressed by the court or other courts; obfuscates

"the legal issues" and complicates the opposing party's and the court's ability to "sort them out";

or "submits rambling briefs" and "cites to inapplicable or irrelevant authorities" or "misrepresents

facts or law to the court."  *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1153 (10th Cir. 2007)

(brackets and citations omitted).  Ultimately, "any conduct that, viewed objectively, manifests

either intentional or reckless disregard of the attorney's duties to the court, is sanctionable."

*Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1202 (10th Cir. 2008) (internal quotation marks

omitted).

## ANALYSIS

### I.    Motion to Amend

In her Motion to Amend, Plaintiff seeks, *inter alia*, leave to file a Third Amended

Complaint to: (1) add a claim for exemplary damages;[6] (2) dismiss JB Ovalle for lack of service;

(3) correct the spelling of Defendant Jay Barber to Jay Barbar; and (4) add Auto Mart Mitsubishi,

Pro-Max and Mike Abssi[7] as Defendants.  [#119].  Ms. Grays argues that the applicable standard

is Rule 15(a)(2).  [*Id.* at 2].  Although Ms. Grays is proceeding pro se, she is still bound by the

same procedural and substantive law as represented parties.  *See Murray v. City of Tahlequah*, 312

---

[6] Though Ms. Grays characterizes her request to add exemplary <u>and</u> punitive damages, a review of her proposed Third Amended Complaint suggests that she is using those terms interchangeably, as opposed to conjunctively.  [#119-7].  In any case, this court understands those terms to be interchangeable for the purposes of the Motion to Amend and this Recommendation.

[7] Plaintiff's Second Motion for Leave to Amend seeks to correct the spelling of Mr. Abssi's name to Mohammed Al-Abssi and name him in his individual and professional capacities.  [#134].

F.3d 1196, 1199 n.2 (10th Cir. 2008) (noting that pro se litigants must still comply with the same procedural and substantive law as a represented party).

### A.      Exemplary Damages

"The award of exemplary damages is not a separate and distinct cause of action, but is permitted only in conjunction with an underlying and independent 'civil action' in which actual damages are assessed for a legal wrong done to the injured party." *Mort. Fin. Mortg. Fin., Inc. v. Podleski* ("*Podleski*"), 742 P.2d 900, 903 (Colo. 1987) (citing *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 213 (Colo. 1984)).  Although neither Party parses the Motion to Amend as it relates to different remaining claims, this court finds it appropriate to do so because the analysis differs depending upon the underlying claims. *See, e.g.*, *de Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016) ("Although our common law system relies heavily on advocacy by the parties, judges are free to undertake independent legal research beyond the parties' submissions.").

### 1.      Federal Law Claims

*FCRA.*  In Count 1, Ms. Grays asserts various violations of the FCRA, which include failing to provide her with certain requested documentation and providing her consumer information to lenders without authorization pursuant to 15 U.S.C. § 1681 *et seq.* [#49 at 4].  The FCRA provides a private right of action against those who violate its statutory requirements in procuring and using consumer reports. The affected consumer is entitled to actual damages for a negligent violation. 15 U.S.C. § 1681o. For a willful violation, however, a consumer may recover statutory damages ranging from $100 to $1,000, punitive damages, and attorney's fees and costs. 15 U.S.C. § 1681n.

In her Second Amended Complaint, Ms. Grays sought punitive damages under 15 U.S.C. § 1681n.  [#16 at 26].  Unlike her state law claims, Ms. Grays is not required to wait, or comply

with, Colo. Rev. Stat. § 13-21-102, to assert such damages.  *Gordon-Smith v. Baldwin*, Case No. 05-v-02541-WYD-MEH, 2007 WL 692324, *3 (D.Colo. Mar. 2, 2007).  Defendants did not move to dismiss the punitive damages pled in Ms. Grays's Second Amended Complaint, and this court finds no basis for requiring Ms. Grays to file a Third Amended Complaint to pursue exemplary damages under her FCRA claim.

   ***Truth in Lending Act.***  Ms. Grays pursues Counts 2 and 20 pursuant to TILA. [#16; #49]. Like her FCRA claim, these claims arise under federal law, and therefore are not subject to Colo. Rev. Stat. § 13-21-102.  *See Gordon-Smith*, 2007 WL 692324, at *3.  But unlike the FCRA, TILA does not provide for distinct punitive damages, only actual and statutory damages.  *Sadler v. Bank of New York Mellon*, No. 17-CV-02962-MSK-KLM, 2018 WL 1531687, at *4 (D. Colo. Mar. 29, 2018) (observing that TILA damages are limited to actual and liquidated damages); *Pelayo v. Home Capital Funding*, No. 08-CV-2030IEGPOR, 2009 WL 1459419, at *9 (S.D. Cal. May 22, 2009) (dismissing plaintiff's claim for punitive damages under TILA because the statute does not provide for such relief).  To the extent that Ms. Grays seeks punitive damages beyond actual and liquidated damages, there is no statutory basis for such damages.

   Thus, with respect to Ms. Grays's FCRA and TILA causes of action, this court respectfully **RECOMMENDS** that the Motion to Amend be **DENIED**.

### 2.    State Law Claims

   In Count 7, Plaintiff contends that Auto Mart's advertising, including statements regarding "credit guaranteed" and "dealers with a heart," constitutes fraudulent misrepresentation.  [#16-1 at ¶¶ 86-93].  In Count 16, Plaintiff contends that Defendants have violated Colo. Rev. Stat. § 4-5-109(a), fraud and forgery.[8]  [*Id.* at ¶¶ 94-105].  Colo. Rev. Stat. § 13-21-102 expressly

---

[8] It is not entirely clear that Ms. Grays asserts a distinct common law claim for fraud beyond the statutory violation of § 4-5-109(a), fraud and forgery.  *See* [16-1 at ¶¶ 94-105].  However, because

contemplates punitive damages may be appropriate for civil actions where the injury claimed "is attended by circumstances of fraud." *See* Colo. Rev. Stat. § 13-21-102; *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1142 (D. Colo. 2008). Therefore, this court turns to considering whether Ms. Grays's Motion to Amend is timely, and whether she provides prima facie proof for exemplary damages for fraudulent misrepresentation (Count 7) and common law fraud (Count 16).[9]

As for timeliness, Defendants simply contend "[t]he time to amend the Second Amended Complaint regarding Auto Mart Mitsubishi, Mr. Abssi, exemplary damages and Promax has passed pursuant to the Scheduling Order." [#122 at 4]. But neither side is correct in looking to Rule 15(a) or the deadline set by the Scheduling Order to govern exemplary damages. As discussed above, the statute provides that a claim for exemplary damages may not be asserted until after initial disclosures—in this case, April 30, 2018 and upon a showing of prima facie proof. Colo. Rev. Stat. § 13-21-102(1.5)(a); [#48 at 10]. Instead, the court considers whether the record reflects any evidence of delay, bad faith, undue expense, or other demonstrable prejudice. *See Stamp*, 172 P.3d at 449.

Upon review, this court finds none even though Plaintiff filed the instant Motion to Amend after the close of discovery. Ms. Grays has steadfastly contended at every turn, including her Second Amended Complaint, that she has been injured by Defendants' purported fraudulent conduct and that she is entitled to exemplary damages. *See generally* [#16; #16-1]. Defendants

---

Ms. Grays proceeds pro se, this court reads her filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520- 21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Following Judge Krieger's lead, this court interprets Count 16 to include a common law fraud claim, *see* [#100 at 3].

[9] The Parties do no address and this court's independent research did not reveal any case law to suggest that exemplary damages are recoverable for violations of Colo. Rev. Stat. § 4-5-109, and thus this court considers exemplary damages under Count 16 based only on common law fraud.

could hardly be surprised, let alone prejudiced, by her continued assertion that she should be awarded exemplary damages for her claims of fraudulent misrepresentation and common law fraud.  In addition, no Final Pretrial Conference or trial has been set, and there is no argument (nor basis) for additional discovery.  And while this court notes that Defendants have filed Motions for Summary Judgment that do not specifically address punitive damages [#107; #108], Defendants Ramirez, Pacheco, McElroy, Sandoval and Barbar have argued that they are entitled to summary judgment on Plaintiff's claims involving fraud [#107 at 11-16], which, if successful, would preclude any exemplary damages on such claim.  *Podleski*, 742 P.2d at 903.  Accordingly, this court declines to recommend denial of Plaintiff's Motion to Amend based on untimeliness when Defendants have not even attempted to articulate any type of prejudice.

Next, this court considers whether Ms. Grays has established prima facie proof of fraudulent misrepresentation and/or fraud.  Plaintiff contends that "Defendants' normal course of business has been to deprive unsuspecting customers of their rights and protections; through intentionally false and misleading statements to public concerning price and condition of vehicles posted for sale online and subsequent credit transactions with Defendants."  [#119 at 7].  In support of this contention, Ms. Grays offers reviews posted on the internet by third parties that reflect disappointment regarding credit worthiness and pricing [*id.* at 7-8]; improper credit checks [*id.* at 9-10]; misinformation regarding warranties [*id.* at 10]; poor customer service [*id.* at 7-10]; ongoing representations regarding credit pre-approval [*id.* at 11-12].  Plaintiff further supports her request to add exemplary damages by citing to the Rule 30(b)(6) deposition of Auto Mart USA LLC, arguing that Auto Mart admitted that its advertisements of "guaranteed credit approval" and "credit approval guaranteed" were "willfully and wantonly fraudulent without regard for the rights and well[-]being of consumers in the public and consumer Plaintiff."  [#119 at 14].  Plaintiff also argues

that Defendants' litigation conduct, through "[a]ffirmations under oath provided to this Court," have been "fictitious." [*Id.* at 15]. Finally, Plaintiff makes arguments regarding Defendants' use of the symbol ® when Defendants have never registered their "guaranteed credit approval" advertisements. [*Id.* at 5].

Defendants do not specifically respond to any of Ms. Grays's submitted proof or explain why such proof is insufficient. Instead, Defendants simply argue:

> [] Plaintiff has not provided prima facie proof of a triable issue regarding the issue of exemplary damages, pursuant to C.R.S. § 13-21-102(1-5)(a).

[#122 at 4].

The Colorado Supreme Court has recognized that the "general purposes of section 13-21-102 are punishment of the defendant and 'deterrence against the commission of similar offenses by the defendant or others in the future.'" *Podleski*, 742 P.2d at 902-03 (citing *Mince v. Butters*, 616 P.2d 127, 129 (1980)).

The elements of "circumstances of fraud" for the purposes of exemplary damages are identical with the necessary elements of fraud. *See Wood*, 589 F. Supp. 2d at 1256; *Amber Properties, Ltd. v. Howard Elec. & Mech. Co.*, 775 P.2d 43, 46 (Colo. App. 1988) (citing *Palmer*, 684 P.2d at 187). Thus, a "finding that the elements of fraud [are] established also establishe[s] the 'circumstances of fraud' required for punitive damages." *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 F.2d 1380, 1386 (Colo. App. 1990) (upholding award of exemplary damages where the plaintiff prevailed on her fraudulent concealment claim at trial). As discussed, Defendants do not come forward with any specific support, rather than a conclusory statement, for their argument that Plaintiff fails to establish prima facie proof of a triable issue on exemplary damages. In addition, this court notes that Defendants did not seek dismissal of Plaintiff's fraud claims under any basis, including failure to adequately plead under Rule 9 or failure to state a cognizable claim

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. And given that Ms. Grays needs only to establish prima face proof of fraud at this stage, rather than establish admissible facts to overcome summary judgment, this court finds that since her fraud claims remain viable, she should be permitted to pursue punitive damages as to those claims at this stage. *Wood*, 569 F. Supp. 2d at 1142 (declining to dismiss plaintiff's claim punitive damages because his claims for fraud and fraudulent concealment remain viable); *id.* at 1256 (finding that in order to prevail on a demand for punitive damages, the plaintiff need not establish any aggravating factors, but upon establishing fraud, the trier of fact was left to exercise discretion as to whether exemplary damages were warranted).

The question of whether Ms. Grays may be entitled to punitive damages is intertwined with the merits of her claims sounding in fraud and are better suited for either disposition at summary judgment or trial. Accordingly, this court respectfully **RECOMMENDS** that the Motion to Amend be **GRANTED** as to Plaintiff's claims sounding in fraud (Counts 7 and 16). In so finding, this court does not pass on the admissibility of the information presented by Ms. Grays nor the ability for Plaintiff to survive summary judgment or prevail at trial.

### B. Dismissal of JB Ovalle

In her Motion to Amend, Ms. Grays seeks dismissal of Defendant JB Ovalle due to the United States Marshal's inability to serve him. [#119 at 3]. Though Ms. Grays suggests that the Marshal's failure to serve "forced" her to dismiss Mr. Ovalle, it is clear from the record that the United States Marshals attempted service of Mr. Ovalle at the address provided by Plaintiff and was unable to serve him because he was no longer employed at Auto Mart. [#18-1 at 5]. As Judge Krieger explicitly instructed Plaintiff, it is the responsibility of Plaintiff, not the United States Marshals or the court, to identify an appropriate address for service for each Defendant. [#76]. As

detailed in this court's previous Order denying Plaintiff's Motion for Substitute Service, Ms. Grays

has been on notice since at least Judge Krieger's April 29, 2019 Order that she was responsible for

proper service of Mr. Ovalle [#49] and for the same reasons as set forth in that Order, this court

respectfully **RECOMMENDS** that Ms. Gray's Motion to Amend dismissing Defendant Ovalle be

**GRANTED**.

### C.    Correction of the Spelling of Defendant Barbar

Plaintiff also seeks to leave to amend the spelling of Defendant Jay Barber to Jay Barbar.

[#119 at 3]. In their Response, Defendants do not take a position as to whether Mr. Barber's name

should, in fact, be spelled "Barbar." [#122]. The court notes that although defense counsel appears

to have consistently spelled Defendant Barbar's last name as "Barber," *see, e.g.*, [#51 at 1; #107

at 1], his Affidavit in support of the Individual Defendants' Motion for Summary Judgment reflects

a spelling of "Barbar." [#107-1 at ¶ 2]. In addition, Ms. Grays's attorney spelled Mr. Barbar's

name as "Barbar" in her initial demand letter. [#68-5 at 21]. Accordingly, this court respectfully

**RECOMMENDS** that Plaintiff's Motion to Amend be **GRANTED** insofar as it seeks to correct

the spelling of Defendant Barbar's last name.

### D.    Addition of Claims Against Non-Parties Auto Mart Mitsubishi, ProMax, and Mike Abssi

Finally, this court considers Plaintiff's request to add claims against non-parties Auto Mart

Mitsubishi, ProMax, and Mike Abssi. [#119 at 3-5; #119-7]. Because the deadline for amendment

of pleadings and joinder of parties passed long ago on June 3, 2019 [#48 at 10], this court applies

a two-prong analysis to determine whether leave to amend should be permitted. First, the court

considers whether Plaintiff satisfies Rule 16(b)(4), which requires Ms. Grays to establish good

cause for the amendment of the Scheduling Order, i.e., the deadline could not be met even with

diligence. *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco, Inc.*, 204 F.R.D. at 668). Only after

diligence and Rule 16(b)(4) are established does the court consider whether Rule 15(a) is satisfied. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248-49 (10th Cir. 2015).

With respect to Auto Mart Mitsubishi, Ms. Grays indicates that a new trade name was created on August 9, 2019. [#119 at 3]. She further argues that during the corporate depositions of Auto Mart on or about October 4, 2019, the need to add Mr. Abssi became evident because the testimony taken indicated the owner of Auto Mart was responsible for certain decisions. [#124 at 3]. And she contends that "[i]t was not until Defendants' depositions conducted in late October 2019, did Plaintiff become aware of the depth of Defendants [sic] reliance and use of ProMax." [#119 at 4].

While discovery after June 3, 2019 purportedly yielded this information, there is no explanation as to Ms. Grays's diligence to ascertain this information before such deadline. For instance, as noted by Defendants, on or about April 30, 2019, Mr. Abssi was disclosed as the owner of Auto Mart and an individual who "investigated the allegations made in Plaintiff's Second Amended Complaint." [#68-1 at 2]. But Ms. Grays, despite her various complaints as to how Defendants have conducted discovery in this matter, does not demonstrate that she sought information regarding Mr. Abssi's role in her transaction and Defendants refused to provide that information until after the deadline for amendment of pleadings and joinder of parties and/or the close of discovery. Similarly, Ms. Grays, despite the fact that she has complained about the manner in which Defendants procured and used her credit information since May 2018, does not demonstrate that she posed discovery requests that should have yielded information regarding ProMax and/or that Defendants withheld information regarding ProMax until after the deadline for joinder of parties and amendment of pleadings.

But even if this court were to simply accept Ms. Grays's assertions that she did not know of the information necessary to join Auto Mart Mitsubishi until August 2019, and ProMax and Mr. Abssi until October 2019, Ms. Grays does not explain why she then waited until December 30, 2019 to seek amendment—allowing discovery to close and summary judgment motions to be filed that would necessarily be implicated should this court permit these additional non-parties to be joined.  A party's delay in performing the pretrial preparation necessary to recognize a claim or defense does not satisfy Rule 16(b)(4)'s good cause standard. *See Colo. Visionary Acad.*, 194 F.R.D. at 688.  Ms. Grays appeared before this court on November 7, 2019 for an informal discovery dispute conference involving materials from ProMax, indicating that no later than that date, Ms. Grays understood Defendants were relying upon information from ProMax in making their decisions at issue in this case. [#102 at 2].  By November 11, 2019, Defendants had provided additional information regarding ProMax to Plaintiff and the court.  [#103].  Ms. Grays's submission to the court regarding her continued concerns regarding the data that she received regarding ProMax reflects her active engagement with the information no later than November 14, 2019.  [#104].  And yet Ms. Grays did not seek leave to amend for over another month, with no explanation.  *See generally* [#119; #124].

As discussed above, Ms. Grays's pro se status does not excuse her from the same procedural and substantive law that applies to represented parties.  *See Murray*, 312 F.3d at 1199 n.2.  But even beyond that, Ms. Grays "has shown herself to be an active litigant in this and other cases in this Court and she is fully capable of setting forth her legal arguments and complying with deadlines and other litigation obligations."  [#39].  Against this backdrop, this court finds that Ms. Grays has failed to carry her burden of establishing good cause under Rule 16(b)(4) in the first instance.

While Ms. Grays's failure to carry her burden of establishing good cause is reason enough to deny her Motion to Amend, this court proceeds to considering the second prong of the analysis for the sake of completeness.  Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *Frank*, 3 F.3d at 1365.  Ultimately, whether to allow amendment is within the trial court's discretion.  *Burks*, 81 F.3d at 978-79.

Here, this court in unpersuaded that Ms. Grays should be permitted leave to add additional claims against non-parties Auto Mart Mitsubishi, ProMax, or Mr. Abssi, even under Rule 15(a)'s lenient standard for the following reasons.  In addition to undue delay discussed above, further delay by adding ProMax, an unrelated third party, will necessarily reopen discovery and delay the adjudication of this matter.  And due to the timing of Ms. Grays's Motion to Amend, she has effectively eliminated the ability for Auto Mart Mitsubishi and/or Mr. Abssi to move for summary judgment in their favor, without restarting the clock for such motions.  This case has been pending since July 2018, the alleged violations occurred over two years ago in March 2018, and any further delay to the disposition of the case prejudices not only Defendants but the court's ability to efficiently address its docket.

Nor does Ms. Grays make any argument or carry her burden of establishing that ProMax is a necessary party to this instant action, or that any claims she may have against ProMax cannot be appropriately raised by a separate action.  Next, as to Auto Mart Mitsubishi, Ms. Grays has failed to establish that the entity has any role in the circumstances occurring on or about March 17, 2018, giving rise to her Second Amended Complaint.  Indeed, she concedes that Auto Mart

Mitsubishi was not registered as a trade name until August 2019—well after the incident at issue in this action—and she has not established that Auto Mart Mitsubishi is the legal successor-in-interest to the Auto Mart Defendants, even on Reply after Defendants' opposition.  Nor has she established that Auto Mart Mitsubishi is a "necessary party" under Rule 19(a)(1)(A) or (B); the mere invocation of Rule 19, without more, is simply insufficient to sustain her burden.  Finally, Ms. Grays does not allege that Mr. Abssi had any direct involvement to justify individual liability as to any of her remaining claims.  Rather, Ms. Grays seeks to impute liability to Mr. Abssi based on his ownership of Auto Mart.  *See, e.g.*, [#119-7 at 4].  But that is not an adequate basis for individual liability under the FCRA.  *Bath v. Boundy*, No. 18-CV-00384-RBJ-STV, 2018 WL 3382934, at *3 (D. Colo. June 12, 2018) (finding that a complaint that failed to allege any direct conduct was insufficient to hold an individual defendant liable under the FCRA) (citations omitted).  Similarly, beyond her general allegation that Mr. Abssi as the owner of Auto Mart is "responsible for making key business decisions," she does not allege facts that support a finding that Mr. Abssi, as an individual, is a "creditor" for the purposes of TILA or that support the piercing of the corporate veil for any remaining claim—even after months of discovery.

Accordingly, for the reasons set forth herein, this court respectfully **RECOMMENDS** that Ms. Grays's Motion to Amend be **GRANTED IN PART** insofar as she seeks permission to pursue exemplary damages in conjunction with her state law fraud claims, the dismissal of Defendant Ovalle, and the correction of the spelling of Defendant Barbar, but **DENIED IN PART** in all other respects.[10]  In light of this court's Recommendation to deny the Motion to Amend with respect to

---

[10] Given that the Second Amended Complaint includes a demand for exemplary damages that were never stricken and the dismissal of all claims against Defendant Ovalle and the correction of the spelling of Defendant Barbar's name do not change the substantive claims or allegations, it appears that the filing of a Third Amended Complaint may not be necessary.  Nevertheless, this court appropriately leaves that determination to the sound discretion of the presiding judge.

the addition of Mr. Abssi, this court also respectfully **RECOMMENDS** that Plaintiff's Second

Motion to Amend be **DENIED as moot**.

## II.   Plaintiff's Third Motion to Compel

In Ms. Grays's Third Motion to Compel filed on February 6, 2020, she seeks an order from

the court compelling Defendants to supplement their responses to Interrogatory Nos. 6, 19, 20, and

24 and Requests for Admissions Nos. 21 and 24.  [#128 at 3].  Defendants have not responded to

the Third Motion to Compel, and the time to do so has long elapsed.  Nevertheless, based on the

record before it, this court finds no basis to compel further supplementation of Defendants'

discovery responses to Interrogatory Nos. 6, 19, 20, and 24 and Requests for Admissions Nos. 21

and 24.

First, despite Ms. Grays's contention in her Brief in Support of Third Motion to Compel

[#133 at 2], Defendants' failure to respond to the Third Motion to Compel does not automatically

lead to granting it.  Indeed, even in the context of a motion for summary judgment, courts may not

reflexively grant the motion without first examining the substance of the submission and

considering whether the moving party has carried its burden.  *See Murray*, 312 F.3d at 1200.

Second, Ms. Grays fails to set forth the substance of either the interrogatories or requests

for production at issue, thereby failing to comply with D.C.COLO.LCivR 37.1 that requires a

motion under Rule 26 or 37 directed at an interrogatory, request, or response under Rules 33, 34,

or 36 to set forth either in the text of the motion or in an exhibit to the motion the specific

interrogatory, request, or response to which the motion is directed.  *See* [#128].

Third, despite Ms. Grays's characterization of Defendants' conduct, neither Mr. Ramirez's

affidavit on January 17, 2020 nor Mr. Sandoval's statement on August 3, 2018, standing alone or

taken together, lead this court to conclude that Defendants improperly failed to admit the

fraudulent inducement alleged in this instant case.  [#128 at 2].  And though this court construes Ms. Grays's papers liberally, it cannot act as her advocate to construct arguments that are not otherwise articulated.  *See Hall*, 935 F.2d at 1110.

Finally, Ms. Grays later filed a "Brief in Support of Plainitff's [sic] [Third] Motion for Compel Defendants' Compliance with Fed. R. Civ. P. 26(e)(1)-(A)" ("Brief in Support of Third Motion to Compel") on February 29, 2020.  [#133].  The Local Rules of Practice for the District of Colorado do not contemplate separate briefs in support of motions, *see, e.g.*, D.C.COLO.LCivR 56.1, and certainly not in cases where the motions contain substantive argument.  Upon review, it appears that Ms. Grays's Brief in Support of Third Motion to Compel is, in fact, a supplemental brief that the court has not given Plaintiff leave to file.  Accordingly, this court is disinclined to pass on the arguments made in this Brief in Support of Third Motion to Compel.  Even if the court was to consider the Brief in Support of Third Motion to Compel, it finds that Ms. Grays does not carry her burden of establishing that Defendants' responses to Interrogatory Nos. 6, 19, 20, and 24 and Requests for Admissions Nos. 21 and 24 are deficient for both procedural and substantive reasons.  Procedurally, with respect to Interrogatory Nos. 6 and 24, she does not comply with D.C.COLO.LCivR 37.1.  *See* [#133].  Interrogatory No. 6 and its response are omitted altogether.  [*Id.*].  And while Ms. Grays includes Interrogatory No. 24 as propounded [*id.* at 3, 4], no response appears to be included.  *See generally* [#133].  With respect to Interrogatory Nos. 19 and 20, Defendants appeared to have answered both Interrogatory No. 19 and 20 and the exhibits that Ms. Grays attaches do not support a finding that such responses are incorrect.  *See* [#133-1].

Accordingly, this court **DENIES** Plaintiff's Third Motion to Compel.

### III.    Plaintiff's Second Motion for Rule 11 Sanctions

In Ms. Grays's Second Motion for Rule 11 Sanctions, she repeats her argument that Defendants have improperly refused to admit fraudulent inducement in this case.[11]  [#135 at 3]. In addition, she seeks Rule 11 sanctions based on Defendants' discovery conduct.  *See generally* [#135].  In Response, Defendants argue that Rule 11 does not apply to discovery conduct and deny that any Defendant made any admission that renders their Answer or any other filing inaccurate, let alone sanctionable under Rule 11(b)'s standards.  [#142].  Defendants further take issue with the expenses that Ms. Grays attributes to Defendants' conduct.  [*Id.*].  On Reply, Ms. Grays insists that Defendants have signed papers in this case that deny facts that they have admitted in the course of the parallel Arbitration [#145 at 3] and her claimed expenses are appropriate.  [*Id.* at 5].

 First, while Ms. Grays contends that Defendants have denied facts in this action that they admitted in the Arbitration or that affidavits submitted to the court are false, for the reasons set forth above, this court finds that Ms. Grays has not carried her burden of establishing that Defendants submitted papers in violation of Rule 11.  Nor is it clear from the record before the court that Defendants have admitted that they fraudulently induced Ms. Grays in any manner. Though not entirely clear, Ms. Grays appears to assert that Defendants' denial in their Answer that they informed Ms. Grays that they were performing a "soft credit check" violated Rule 11 because Defendants later admitted that Defendant McElroy told Ms. Grays that she was subject only to a "soft credit check."  [#145-2 at 2].

Insofar as Ms. Grays contends that Defendant McElroy's admission regarding the "soft credit check" translates into an admission that Defendants are liable for fraudulent misrepresentation as pled in Count 7 or common law fraud as pled in Count 16, this court

---

[11] In fact, some of the arguments throughout Ms. Grays's various motions appear repeated verbatim.  *Compare* [#128 at2] *with* [#135 at 3] *and* [#136 at 78].

respectfully disagrees.  Assuming Defendant McElroy's statement was false for the purpose of this analysis, it does not seem relevant to Count 7, which is based on the Defendants' statements regarding "credit guaranteed" and "dealers with a heart," constituting fraudulent misrepresentation.  [#16-1 at ¶¶ 86-93].  With respect to any common law fraud claim encompassed by Count 16 regarding Defendant McElroy's statements [*id.* at ¶¶ 102-03], this court finds that Defendant McElroy's statement, standing alone, cannot satisfy the other elements of fraud under Colorado law such that Defendants were obligated under Rule 11 to concede the claim at the time of their Answer.[12]  And while this court is troubled by the inconsistencies between the testimony of the respective Defendants and the conclusory nature of much of Defendants' Response, there is insufficient evidence in the record for this court to find that Mr. McKinnon knew in signing the Answer that the denial of Ms. Grays's allegation regarding Defendant McElroy's statement regarding the "soft credit check" was inaccurate or his invocation of lack of knowledge was unreasonable at that time.  It appears that Defendant McElroy's statement in the context of the Arbitration occurred *after* the filing of the Answer, and Defendants point out that they supplemented their discovery responses to reflect Mr. McElroy's arbitration testimony on or about March 4, 2020.  [#142 at 3].  As for any argument that Plaintiff is entitled to Rule 11 sanctions based on discovery conduct, as previously noted by this court [#90 at 11] and adopted by Judge Krieger [#100 at 5-6], Rule 11 does not apply to discovery conduct.  Fed. R. Civ. P. 11(d).

---

[12] "Under Colorado law: To establish fraud, the plaintiff must show that the defendants made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." *Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 721 (10th Cir. 2014) (*citing Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo.2005)).

Even if this court were to find a violation of Rule 11(b), any sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Ms. Grays seeks judgment in her favor on all claims [#135 at 5], but the record does not demonstrate a violation so egregious as to warrant such relief.  In addition, the monetary relief that Ms. Grays seeks is not recoverable under Rule 11.  Fundamentally, Ms. Grays's demand of over $40 million is simply not proportional to any violation of Rule 11 that the court might find. In addition, as previously explained, as a pro se litigant, Ms. Grays is not entitled to attorney's fees.  [#135 at 2 ¶ 11; #127 at 15 n.6 (citing *Kay v. Ehrler*, 499 U.S. 432, 438, 111 S. Ct. 1435, 1438, 113 L. Ed. 2d 486 (1991))].  In addition, most, if not all, the expenses claimed by Ms. Grays simply are not traceable to the alleged violation of Defendants' failure to admit that Defendant McElroy informed Ms. Grays that he only performed a "soft credit check" in the Answer.  Ms. Grays claims expenses that occurred well-before May 17, 2019 when Defendants filed their Answer.  *See* [#135-3 at 3-5].  Even after May 17, 2019, she claims "cooking," [*id.* at 5]; unidentified "litigation expenses" incurred at retail stores like Walmart and Sam's Club [*id.*]; medication incurred at marijuana dispensaries such as Herbal Cure and Green Solution [*id.* at 6]; and restaurant meals at Panera, BJ's Brewery, and Subway [*id.* at 6].  She even claims "vacation." [*Id.* at 10].  This accounting reflects Ms. Grays's misunderstanding as to the purpose and nature of Rule 11 sanctions.

Based on the foregoing reasons, this court respectfully **RECOMMENDS** that Plaintiff's Second Motion for Rule 11 Sanctions be **DENIED**.

IV.     **Plaintiff's Third Motion for Discovery Sanctions**

In her Third Motion for Discovery Sanctions, Plaintiff argues that the court previously found that Defendants lied under oath and Defendants withheld over 400 pages of ProMax documents.  [#136 at 5].  Ms. Grays argues that she was lured to Auto Mart based on an advertisement for a Mitsubishi Outlander that did not disclose that the vehicle had a salvaged title, and then Defendants defrauded her into purchasing a Dodge Journey that she ultimately had to return when credit for her purchase could not be secured but that evidence .  [*Id.* at 7].  Ms. Grays further contends that Mr. Sandoval's statement that "[Grays] came into the dealership to look at a Mitsubishi Endeavor however it had a salvaged title" to the Colorado Department of Revenue as compared to Mr. Ramirez's later statement on January 17, 2020 that "the advertisement regarding the Mitsubishi Outlander erroneously did not include a statement that the vehicle was salvaged," amounts to fraudulent  inducement.  [*Id* at 7-8].  Pointing to Defendants' statements reflected in [#103; #107; #108; #104; #120; and #128], Ms. Grays argues that Defendants failed to make a reasonable inquiry before providing discovery responses, and that "Defendants' words and affidavits have been shown to be untrustworthy."  [#136 at 10].

Ms. Grays also argues that Mr. McKinnon's actions amounts to multiplication of proceedings by an attorney, which justifies an award of costs, expenses, and fees amounting to the damages she articulated in the Scheduling Order, namely $10,381.10 of out of pocket costs, $513.73 in medical expenses, and $41,469,152.10 in lost wages [*id.* at 11 (citing [#48])].  Ms. Grays asks the court to strike Defendants' Answer and enter default against them; compel Defendants to respond to questions to which they indicated lack of knowledge; to reopen discovery to permit additional depositions; order the payment of additional expenses arising from depositions already taken; to reopen discovery and issue additional subpoenas; assess an interest rate of 5%

for every expense not paid within 14 days; allow Plaintiff to inspect and record the ProMax system at Defendants' expense; supplement certain responses; adopt Plaintiff's claims as true and grant Plaintiff full summary judgment; grant leave for Plaintiff to amend her Motion for Summary Judgment and Second Amended Complaint; and reasonable litigation costs and expenses. [*Id.* at 14-15].

This court finds that there is no basis for either compelling further discovery in this matter or sanctioning Defendants with respect to the conduct of which Plaintiff complains. As an initial matter, the Third Motion to Compel is, in large part, a rehashing of the same arguments made by Plaintiff in conjunction with Motion to Compel and Extend Discovery Deadline [#104, filed November 14, 2019] and Second Motion to Compel Defendants' Compliance with Fed. R. Civ. P. 26(a)(1)(A)(iv) [#111, filed January 1, 2020] that this court ruled upon in its January 28, 2020 Order [#127].

To the extent that Ms. Grays seeks for this court to reconsider its rulings made therein, such reconsideration is inappropriate for at least two distinct reasons. First, Ms. Grays has already objected to that Order [#130], and Judge Krieger will appropriately rule upon that Objection in due course. Second, Ms. Grays has identified no changed circumstances or new law to persuade this court to exercise its discretion to substantively reconsider its prior ruling. Because Plaintiff seeks reconsideration of a non-final order, it "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06–cv–00037–PAB–CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010); see also Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a

judgment adjudicating all the claims and all the parties' rights and liabilities."). Courts in this district have applied different standards on motions for reconsideration of non-final orders. *See United Fire & Cas. Co.*, 2010 WL 420046, at *3 (listing cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard). But as a general principle, courts may grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is not an avenue for a party to reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding. *See id.; Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

Next, this court respectfully disagrees that it previously found that the court previously held that Defendants lied under oath [#136 at 5 (citing [#127 at 12-13])] or that its prior Order is an appropriate basis for a finding of contempt against Defendants. Indeed, by Plaintiff's own admission, Defendants responded to the court's various discovery orders with further production. [*Id.* at 5, 10]. And it appears that Ms. Grays was permitted to inspect the ProMax system live in conjunction with the Arbitration. [#143 at 3]. Nor is it clear what significance this additional production has upon Plaintiff's claims. Ms. Grays's arguments regarding these documents lack specificity, and rather speculate that Defendants' electronic data "may" contain information that is "likely" to be relevant to her claims or could have been used to question Defendants or support her Motion for Summary Judgment. [*Id.* at 6, 10].

In addition, this court is not persuaded that Mr. McKinnon is responsible for multiplying the proceedings in contravention of 28 U.S.C. § 1927. Based on the course of conduct experienced first-hand by this court in the context of discovery and pretrial proceedings, this court finds that

the number of filings in this matter is a result of the conduct of both sides—and that Ms. Grays

bears equal responsibility in the overly contentious nature of this action.

Accordingly, this court respectfully **RECOMMENDS** that Plaintiff's Third Motion for

Discovery Sanctions be **DENIED**.

## CONCLUSION

For the reasons stated herein, it is respectfully **RECOMMENDED** that:

(1)     Plaintiff's Motion for Leave to File Plaintiff's Third Amended Complaint and

Plaintiff's Amended Motion for Summary Judgment [#119] be **GRANTED IN PART and**

**DENIED IN PART**;

(2)     Plaintiff's Second Motion for Leave to File Third Amended Complaint [#134] be

**DENIED AS MOOT**;

(3)     Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) [#135] be

**DENIED**; and

(4)     Plaintiff's Second Motion for Sanctions Pursuant to Fed. R. Civ. P. 26, 37, and 28

U.S.C § 1927 [#136] be **DENIED**.[13]

---

[13] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that

It is further **ORDERED** that:

(1)     Plaintiff's Motion to Compel Defendants' Compliance with Fed. R. Civ. P. 26(e)(1)-(A) [#128] is **DENIED**.


DATED: April 17, 2020                                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).