**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 18-cv-01761-MSK-NYW

TIFFANY GRAYS,

      Plaintiff,

v.

AUTO MART USA, LLC,
JORGE PACHECO,
AUTO MART USA2,
DANIEL RAMIREZ,
DONNIE MCELROY,
MARCO SANDOVAL,
AUTO MART, and
JAY BARBAR,

      Defendants.

_____

**OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT;
ADOPTING RECOMMENDATION ON VARIOUS MOTIONS; AND
OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS**
_____

**THIS MATTER** comes before the Court pursuant to: (1) Ms. Grays' Motion for

Summary Judgment as to her own Claims 5 and 6 (**#109**) and the Defendants' Response (**#115**);

(2) Defendant Auto Mart, Auto Mart USA, LLC and Auto Mart USA2's (collectively "Auto

Mart") Motion for Summary Judgment (**108**), Ms. Grays' Response (**#116**), and Auto Mart's

Reply (**#118**); and (3) Defendant Jorge Pacheco, Daniel Ramirez, Marco Sandoval, Donnie

McElroy, and Jay Barbar's (collectively the "individual Defendants") joint Motion for Summary

Judgment (**#107**), Ms. Grays' Response (**#116**), and the individual Defendants' Reply (**#117**).

Also pending are (1) Ms. Grays' Objections (**#130**) to the Magistrate Judge's January 28, 2020 Order (**#127**) denying in part Ms. Grays' Motion to Compel; and (2) the Magistrate Judge's April 17, 2020 Recommendation (**#146**) that Ms. Grays' Motions for Leave to File a Third Amended Complaint (**#119, #134**) be granted in part and denied in part, and that Ms. Grays' Motion to Compel (**#128**) and Motions for Sanctions Pursuant to Fed. R. Civ. P. 11, 26, and 37 and 28 U.S.C. § 1927 (**#135, #136**) be denied, to which no objections were filed.

## FACTS

**Background**

The Court briefly summarizes the facts, primarily as they appear in the Amended Complaint (**#16**), and elaborates as necessary in its discussion.

Ms. Grays brings this action *pro se*[1].  In March 2018, she sought to purchase a used vehicle from Auto Mart, a business that advertises, among other things, "Guaranteed Financing." Initially, she was interested in a Mitsubishi Outlander[2] that she saw on Auto Mart's website. However, when she learned that the vehicle was being sold with a salvage title, she instead decided to consider the purchase of a 2013 Dodge Journey.  She wanted to finance the vehicle and understood from Mr. Pacheco, the salesman initially handling the transaction, that Auto Mart would conduct only a "soft" credit check.  Ms. Grays agreed to purchase the Dodge Journey and, after completing certain paperwork, drove away in that vehicle.  The paperwork included a

---

[1]     Given Ms. Grays' *pro se* status, the Court reads her pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  However, Ms. Grays must still comply with procedural rules and satisfy substantive law to be entitled to relief.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

[2]     Certain records sometimes refer to a different Mitsubishi model name, including an "Endeavor." The discrepancies appear to be irrelevant to the scope of Ms. Grays' claims.

provision advising Ms. Grays that if Auto Mart could not complete her financing, it would have the right to rescind the transaction and require her to return the vehicle.

Three days later, Donnie McElroy, Auto Mart's Assistant Sales Manager, called Ms. Grays to advise her that Auto Mart was unable to obtain financing for her purchase and requested that she return the vehicle.  Ms. Grays did so.  Some time later, Auto Mart sent Ms. Grays a letter that confirmed  Mr. McElroy's statements.  The letter, a form containing a variety of statements that were adopted by making a checkmark next to them, stated that Auto Mart had not submitted her application for financing to outside banks or other potential creditors; rather, it indicated that "we made the decision on your application without submitting it to another."   But despite this representation, Ms. Grays was contacted by several lenders stating that Auto Mart had sought credit approval for her. She also noticed on her credit report that Auto Mart had made "hard checks" on her credit, contrary to Mr. Pacheco's representations. She contends that Auto Mart's "hard" credit checks and contact with other lenders who ultimately declined to provide financing adversely affected her credit score, and ultimately resulted in her losing her job and housing, among other injuries.

**This Action**

Ms. Grays' operative pleading, the Second Amended Complaint (**#16**), is lengthy and somewhat difficult to parse.  It does not distinguish among claims brought against Auto Mart itself and the individual Defendants, all of whom were employed by Auto Mart during the events

at issue.  Instead, all of the claims are asserted against all of the Defendants.[3]  In a prior Order

**(#49)**, this Court construed Ms. Grays claims to be as follows:

> • **Claim 1:** various violations of the Fair Credit Reporting Act
> ("FCRA"), 15 U.S.C. § 1681 *et seq.*, including failing to provide
> her with certain requested documentation and providing her
> consumer information to lenders without authorization;
>
> • **Claim 2:** violation of the Truth In Lending Act ("TILA"), 15
> U.S.C. § 1604 *et seq.*, in that the Defendants falsely claimed to
> perform only "soft credit checks," when, in fact, they were
> performing "hard checks" of her credit to the detriment of her
> credit score;
>
> • **Claim 3**: violation of the Electronic Signatures in Global and
> National Commerce Act, 15 U.S.C. § 7001(c)(1), by failing to
> advise Ms. Grays of, for example, the right to receive paper copies,
> rather than electronic copies, of certain records and the right to
> withdraw her consent to receiving records in electronic form;
>
> • **Claim 4:** violation of the Equal Credit Opportunity Act, 15
> U.S.C. § 1691(a), in that the Defendants denied her credit
> application on the basis of her race (black) and sex;
>
> • **Claim 5**: what is either a claim for common-law fraud or
> violation of Colorado's Unfair Practices Act, C.R.S. § 6-2-101 *et
> seq.*, in that the Defendants made various fraudulent
> misrepresentations to her, including misrepresenting their hard
> credit checks as soft checks, misleadingly advertising that "credit
> approval [was] guaranteed," and falsely advertising vehicles
> without disclosing that they had salvage titles;
>
> • **Claim 6**: a claim captioned as "fraudulent concealment of
> material facts," apparently sounding in common-law fraud under
> Colorado law, alleging that the Defendants concealed various
> material facts such as those implicit in Claim 5;
>
> • **Claim 7:** violation of C.R.S. § 5-3-110, which prohibits false or
> misleading statements by lenders with regard to consumer credit

---

[3]      Although the Second Amended Complaint does not identify which Defendants are the
subject of which claims, from the briefing, the Court understands Claim 12 to be asserted against
Defendant Auto Mart, only.  It was submitted to arbitration and is not pending here.  **(# 16)**.

transactions, in that the Defendants falsely advertised guaranteed credit approval;

• **Claim 8**: breach of contract under Colorado law, in that the Defendants (possibly only Auto Mart and Mr. McElroy) breached that portion of the Sale Contract that required <u>written</u> notice to Ms. Grays of Auto Mart's election to cancel the contract due to lack of financing;

• **Claim 9**: a claim that appears to sound in common-law promissory estoppel, in that the Defendants performed hard credit checks and did not provide Ms. Grays with guaranteed credit approval, among other things that were promised to her;

• **Claim 10**: [Ms. Grays has withdrawn this claim. *See* Docket #116 at 10.]

• **Claim 11**: common-law outrageous conduct, apparently referring to the entirety of the conduct alleged by Ms. Grays;

• **Claim 12**: violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105, apparently asserted only against Auto Mart, in that it falsely advertises guaranteed credit approval and deceived customers as to the status of the titles on its cars;

• **Claim 13**: violation of C.R.S. § 5-3-210, which prohibits race and sex discrimination in consumer credit transactions;

• **Claim 14**: [Ms. Grays has withdrawn this claim. *See* Docket #116 at 12.]

• **Claim 15:** common-law negligent misrepresentation, relating to the Defendants' false statements that they would guarantee credit approval and that they were only going to conduct soft credit checks;

• **Claim 16:** violation of Colorado's Uniform Commercial Code, specifically C.R.S. § 4-5-109(a) (which relates to forged letters of credit) and C.R.S. § 4-1-304 (which imposes upon every contract a duty of good faith and fair dealing), relating to Auto Mart's false claims of guaranteed credit approval, failure to disclose salvage titles, and performing only soft credit checks, among others;

• **Claim 17:** a claim under C.R.S. § 5-5-109, which provides for reformation and damages in circumstances where a consumer credit transaction is found to be unconscionable;

• **Claim 18**: a common-law claim for breach of fiduciary duty, apparently asserted against the individual Defendants, in that each of them was acting in a fiduciary capacity towards her in various respects (including with regard to informing her about the Highlander's salvage title, about conducting soft checks on her creditworthiness, among others) and that each individual defendant breached those duties;

• **Claim 19**: a claim for common-law negligence that simply refers back to all prior allegations and claims in the Second Amended Complaint; and

• **Claim 20**: violation of TILA, 15 U.S.C. § 1638(a) and (b), which requires disclosure of certain aspects of credit transactions, although Ms. Grays contends that the Defendants violated this provision by using a "fictitious authorization" she purportedly gave to provide potential lenders with her credit information and that the Defendants failed to disclose certain undisclosed matters on its website.

Consistent with an agreement to arbitrate found in the sale contract Ms. Grays signed in conjunction with the purchase of the Dodge Journey, Auto Mart moved to have the claims asserted against it remitted to mandatory arbitration. In April 2019, this Court granted **(#49)** that motion. Describing Ms. Grays' claims as "overlapping," the Court declined to specifically identify which claims were subject to the agreement to arbitrate, instead defining the arbitrable claims by categories: (i) claims that Auto Mart "falsely advertise[d] 'guaranteed credit acceptance' or variants thereof" as well as "any clams that involve[ ], as a pertinent fact, Auto Mart's actual failure to assign the Sale Contract to a lender"; (ii) certain claims that "involve statutes that require disclosures to be made as part of a consumer credit transaction," such as TILA claims; and (iii) more generally, any claim that "arise[s] under or relate[s] to the Sale

Contract."  Ultimately, the Court suggested that Ms. Grays' designation of her claims in the arbitration would help delineate which claims against Auto Mart would be barred in this action. The Court declined to compel Ms. Grays' claims against the individual Defendants to arbitration, but noted that questions of agency and other principles might bear on whether her claims against the individual Defendants could be subsumed by her claims against Auto Mart (including claims compelled to arbitration).  *Docket* #49 at 9-10.

There is some lack of clarity in the record as to which claims against Auto Mart remain for adjudication.  In a subsequent Order **(#100)** in October 2019, the Court indicated (admittedly somewhat confusingly) that the only remaining claims against Auto Mart in this action were: (i) "violations of the Fair Credit Reporting Act"; (ii) "violations of the Truth In Lending Act"; (iii) "fraudulent misrepresentation"; (iv) violations of C.R.S. § 4-5-109(a); (v) claims asserting "fraud and forgery"; and (vi) claims asserting a violation of 15 U.S.C. § 1638(a)(1) and (b)(1)(B).  In Auto Mart's summary judgment motion, it contends that Ms. Grays has submitted her Claims 2-13[4] and 15-19[5] to arbitration.  Auto Mart argues that Claims 20 is encompassed within the category of TILA claims that relate to the Sale Contract, and thus subject to mandatory arbitration under the terms of the April 2019 ruling, such that Ms. Grays may not pursue those claims in this action.  Thus, Auto Mart contends that only Claim 1 and Claim 16 against it remain for consideration by the Court.

Ms. Grays contends that the scope of the remaining claims against Auto Mart is defined by the terms of the Court's October 2019 Order.  In a separate filing, Ms. Grays has asserted that

---

[4]     Auto Mart's motion variously lists Claim 10 as both referred to arbitration and still pending.

[5]     Auto Mart's motion appears to suggest that only "part of" Claim 16 – apparently that part invoking C.R.S. § 4-1-304 – was submitted to arbitration.

the claims falling outside of arbitration are: (i) Claims 5, 6, 7, 11, 12, and 15-19 as they relate to the events involving the Mitsubishi Outlander, and (ii) Claim 3, concerning her claim under the Electronic Signatures in Global and National Commerce Act.

 Auto Mart, the individual Defendants, and Ms. Grays have all filed motions seeking summary judgment, in part or whole.  Ms. Grays's motion (**#109**) argues: (i) that she is entitled to a finding that the individual Defendants acted as agents of Auto Mart, presumably as to all claims; and (ii) that her Claims 5 and 6 sound in common-law fraudulent misrepresentation and fraudulent concealment, and that the individual Defendants engaged in such fraud by failing to disclose that the Mitsubishi Outlander had a salvage title and by falsely representing that credit approval was guaranteed for all purchases.

 Auto Mart moves (**#108**) for summary judgment on Claim 1 (FCRA violations) for various reasons discussed more fully below, and on Claim 16 (forged letters of credit), arguing that Ms. Grays cannot show that the transaction involved any letter of credit and cannot show that any such letter of credit was forged.

 The individual Defendants move (**#107**) for summary judgment on all claims asserted against them, primarily arguing that Ms. Grays has not and cannot make a *prima facie* showing to establish them.

## ANALYSIS

I.    **Motions for Summary Judgment (# 107; #108; #109)[6]**

**A. Procedural Standards**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Produce's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

_____

[6]    The Court has considered the record including the motions for summary judgment,
responses, replies, and all evidence submitted in support and opposition to those filings.  In
addition, the Court has considered all of Ms. Grays' statements or allegations (regardless of the
form in which they have been submitted) to the extent they are arguably based upon her personal
observation or knowledge.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross motions for summary judgment.  Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact, these motions must be evaluated independently.  *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."); *In re Ribozyme Pharmaceuticals Inc. Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

**B.  Agency**

Because the issue is largely undisputed and strongly controls the remainder of the analysis, the Court begins with that portion of Ms. Grays' motion that seeks a conclusive determination that the individual Defendants were acting as Auto Mart's agents for purposes of all actions at issue in this case.

Ms. Grays argues that each of the individual Defendants "were acting within the scope of their employment" with Auto Mart "during the actions in question."  In their response, the individual Defendants essentially agree, stating that "on all of Plaintiff's claims[, ] they were employees of Defendant Auto Mart" as to the events in question.  Notably, although the individual Defendants' response does not concede that all of their actions were undertaken within the course and scope of their employment, they have not tendered any facts that dispute Ms. Grays' allegations on that point.[7]

Under Colorado law, an employee acting within the course and scope of his or her employment is generally deemed to be an agent of the employer, and the employer may be held vicariously liable for tortious acts and other wrongs committed by its agents.  *See e.g. Moses v. Diocese of Colorado*, 863 P.2d 310, 329-30 (Colo. 1993).  Because both sides appear to agree that the individual Defendants were acting within the course and scope of their employment with Auto Mart during the events at issue here, the Court finds that fact to be undisputed for purposes

---

[7]      The same attorneys represent both Auto Mart and the individual Defendants.  Auto Mart has not sought to be heard in response to Ms. Grays' summary judgment motion so as to argue that the individual Defendants were not acting as its agents during the events at issue.  Thus, the Court assumes that Auto Mart joins in the individual Defendants' arguments (or lack thereof) regarding the issue of agency.

of Fed. R. Civ. P. 56(g), and thus, deems the individual Defendants to be the agents of Auto Mart with regard to all acts relevant to this case.

This finding changes the analytical paradigm of this case. Because the individual Defendants were acting as agents of Auto Mart, their actions are imputed to, and become the actions of, Auto Mart itself. But Ms. Grays is currently pursuing most of her claims against Auto Mart through arbitration. The Court need not decide questions of whether the agency relationship between the individual Defendants and Auto Mart would allow the individual Defendants to compel Ms. Grays' claims against them to arbitration as well. *See e.g. Smith v. Multi-Financial Securities Corp.*, 171 P.3d 1267, 1272 (Colo.App. 2007). Indeed, the individual Defendants have not so requested. But it is sufficient to note that determination of the claims against the individual Defendants in this forum could conflict with determinations made on claims against Auto Mart in the arbitration. For example, if a factfinder (court or jury) found that the individual Defendants did <u>not</u> mislead Ms. Grays about the nature of the credit checks that would be conducted, but the arbitrator eventually decided that Auto Mart <u>had</u> misled Ms. Grays on that same subject, the two factual findings would be inconsistent.

Where the claims before the Court and the claims in arbitration overlap such that there may be conflicting factual or legal findings, ordinarily one tribunal should stay its hand until the other completes its adjudication. The parties have not advised as to the status of the arbitration, but generally speaking, it is more likely that the arbitration will resolve before a trial in this matter could be completed, suggesting that a stay of this matter pending resolution of the arbitration is warranted. Moreover, given the agency relationship between the individual Defendants and Auto Mart, it is highly likely that the arbitrator's decision regarding the claims against Auto Mart, whatever it may be, may also resolve Ms. Grays' claims against the

individual Defendants, through doctrines of collateral estoppel (if Auto Mart prevails) or joint and several liability (if Ms. Grays prevails).  Thus, the court finds that a stay of this action as to any claim by Ms. Grays against the individual Defendants that touches upon matters pending before the arbitrator is an appropriate.

That leaves the question of which claims remain extant in this case, as well as which claims might survive outside of the ongoing arbitration (and thus, outside of the scope of the Court's stay).  As to these, the Court endeavors to address both sides' understanding of those remaining claims.  First, because Auto Mart appears to concede that Claim 1, that portion of Claim 16 that invokes C.R.S. § 4-5-109(a), and Claim 20 are not presently at issue in the arbitration, the Court will address Auto Mart and the individual Defendants' motion for summary judgment with regard to those claims.  Next, Ms. Grays seeks summary judgment in her favor on Claims 5 and 6, sounding in forms of common-law fraud.  Those claims survive outside the arbitration only to the extent they concern events relating to Ms. Grays' initial intention to purchase the Mitsubishi Outlander (and thus are not subject to the arbitration agreement).  The Court will also address the viability of Ms. Grays' other ostensible claims relative to the Mitsubishi Outlander.  Finally, because Ms. Grays asserts that Claim 3 addresses matters falling outside the scope of arbitration, the Court will address the individual Defendants' motion for summary judgment as to it.

**C.  Claim 1-- Violations of FCRA against Auto Mart and the Individual Defendants**

In Claim 1, Ms. Grays claims that Auto Mart and the individual Defendants violated an array of statutory provisions found in the Fair Credit Reporting Act (FCRA). The alleged violations are not particularly well-defined in either Ms. Gray's Complaint or in her summary judgment response.  Construing her allegations liberally, the Court can divide her FCRA claim

into three temporal parts: (i) events that induced her to come to Auto Mart and express interest in

the Mitsubishi Outlander, up to the point where she decided not to buy that vehicle; (ii) her

decision to purchase of the Dodge Journey, including signing a contract for that purchase and

agreeing to financing terms with Auto Mart and Auto Mart's inability to secure financing and

instruction to Ms. Gays to return the vehicle[8]; and (iii) any actions that Auto Mart may have

taken concerning Ms. Grays after the vehicle was returned and the transaction rescinded.

However, the claims in the second category – those relating to the negotiation and purchase of

the Dodge Journey, the signing of the sale contract, Auto Mart's attempts to arrange financing,

and Auto Mart eventually rescinding the sale – are encompassed by the Court's April 2019 Order

compelling some of Ms. Grays' claims against Auto Mart to arbitration.  *Docket # 49* at 12-13

(claims relating to "the purchase of the Dodge Journey," including claims relating to the

financing of the vehicle, "are subject to arbitration").  This is so regardless of whether Ms. Grays

actually included those claims in her demand for arbitration or not.  *Id.* at 13 ("[a]ny claim that

Ms. Grays chooses <u>not</u> to identify in arbitration, but which does in fact arise under or relate to the

Sale Contract, can be dismissed").  Thus, the Court focuses only on those FCRA claims that

ostensibly arise from events relating to Ms. Grays' contemplated purchase of the Mitsubishi

Outlander, and events that occurred after the Dodge Journey was returned and the sale

transaction rescinded.  With the exception of certain narrow aspects of Claim 1, the Court

---

[8]     Because the sale contract contains an integration clause, any representations that were
made by any of the Defendants during the course of Ms. Grays shopping for or negotiating the
purchase of the Dodge Journey are superseded by the terms of the sale contract itself.  Thus, the
entire course of dealing between Ms. Grays and the Defendants regarding the negotiation,
purchase, and return of the Dodge Journey can be treated as a single transaction.

understands Ms. Grays to presently be asserting claims falling only into the first category – claims relating to her initial intention to purchase the Mitsubishi Outlander.

The Court first turns to the Amended Complaint to determine which FCRA claims fall within these categories.  Ms. Grays' FCRA claims are itemized at Docket #16-1, pages 21-23. Of those allegations:

• Paragraph 72(a) refers to Auto Mart providing false information in an "adverse action written notice" that explained why Auto Mart rescinded the transaction.  Because this allegation concerns the rescission of the sale of the Dodge Journey, this claim is subject to arbitration or, if Ms. Grays failed to raise it in the arbitration proceedings, otherwise barred by the Court's prior Order.

• Paragraph 72(b) appears to allege that Auto Mart falsely claimed to the Colorado Department of Revenue – apparently in response to a post-transaction complaint by Ms. Grays -- that Ms. Grays' failure to provide a larger down payment was the reason why Auto Mart was unwilling to self-finance the transaction.  Assuming, for the moment, that Auto Mart made false statements to the Department of Revenue about its reasons for refusing to finance the transaction, nothing in the FCRA purports to govern a person's communications with state officials, only that person's use of "information contained in a consumer report."  15 U.S.C. § 1681m(a).  Nothing in the quoted portion of Auto Mart's response to the Department of Revenue entails the use of information contained in a consumer credit report.  Thus, all Defendants are entitled to judgment on this portion of Claim 1.

To the extent this claim contends that Auto Mart's response to state officials demonstrates that any explanation Auto Mart gave to Ms. Grays for rescinding the transaction was untrue or misleading, Auto Mart's communications with Ms. Grays about the rescission of

the transaction are, once again, related to the transaction involving the Dodge Journey and are thus subject to arbitration or otherwise barred.

• Paragraph 72(c) alleges that Auto Mart failed to make certain disclosures "at the time of vehicle purchase." Because such claims can only relate to the transaction involving the Dodge Journey, they are either subject to arbitration or barred as abandoned.

The paragraph also alleges that, on various occasions post-sale, Auto Mart refused Ms. Grays' requests that it produce "a copy of [her] credit application/written statement." This contention fails to articulate any colorable violation of the FCRA. Ms. Grays cites to 15 U.S.C. § 1681b(a)(2), which allows a "consumer reporting agency" to "furnish a consumer report" only in conjunction with "the written instructions of the consumer to whom it relates." Ms. Grays has not pointed to any admissible evidence in the record that suggests that Auto Mart or any of the Defendants are a "consumer reporting agency" as that term is defined in the FCRA – that is, a person or entity that: (i) "for monetary fees, dues, or on a co-operative non profit basis"; (ii) regularly engages in "the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties"; and (iii) that it uses an instrumentality of interstate commerce for preparing or furnishing those reports.[9]  15 U.S.C. § 1681a(f). Moreover, nothing in 15 U.S.C. § 1681b(a) requires a consumer reporting agency to furnish information to a consumer. Rather, that statute merely prohibits such an agency from

---

[9]     Putting aside that Ms. Grays' summary judgment response cites only to the individual Defendants' brief, rather than any evidence in the record on these points, her articulation of the facts she would use to prove that the Defendants are "consumer reporting agencies" fails in any event. For example, rather than demonstrating that any Defendant prepares consumer credit information for third parties in exchange for "monetary fees [or] dues," Ms. Grays instead asserts that this element is satisfied because Auto Mart "ha[s] employees" and that "these employees are paid money."

furnishing such information to others except in specific circumstances.  Because nothing in this provision of the FCRA required any Defendant to respond to Ms. Grays' post-sale demands for documents, this paragraph fails to allege any colorable FCRA claim.

• Paragraph 72(d) invokes 15 U.S.C. § 1681g, which requires a consumer reporting agency to disclose certain information to consumers upon their request.  For the reasons set forth above, Ms. Grays has not come forward with evidence that establishes that any Defendant is a "consumer reporting agency" as defined by the statute, and thus, any claim invoking 15 U.S.C. §1681g fails for that reason.

• Paragraph 72(e) alleges that the Defendants violated 15 U.S.C. § 1681r by "providing [her] consumer information to third-party lenders" without her authorization.  It is undisputed that any such action by the Defendants was undertaken in association with the sale and attempted financing of the Dodge Journey, and thus, any claims of this type are subject to arbitration or otherwise barred.

• Paragraph 72(f) refers to the Defendants impermissibly accessing a consumer report about Ms. Grays without her authorization and that it provided that report to others, again without authorization, in violation of 15 U.S.C. § 1681b(a).  Once again, any such action by the Defendants occurred in conjunction with the sale and attempted financing of the Dodge Journey, and thus, such claims are subject to arbitration or otherwise barred.

• Finally, Paragraphs 73-78 of the Amended Complaint assert various violations of the FCRA, based on the theory that the Defendants "furnish information to one or more [credit reporting agencies]," and have not complied with those provisions of the FCRA that govern individuals furnishing such information.  *See* 15 U.S.C. § 1681s-2(a).   However, Ms. Grays' summary judgment response does not address this "furnishing information" line of claims

whatsoever, and thus, Ms. Grays has failed to come forward with evidence that any Defendant did indeed furnish any information to a consumer reporting agency, much less demonstrate that the Defendant knew or had reason to believe that such information was inaccurate (much less demonstrate that they did so in conjunction with the Mitsubishi Outlander, as would be required for such a claim to remain cognizable in this Court). Thus, the Defendants are entitled to summary judgment on this claim.

Accordingly, because Ms. Grays has not come forward with evidence demonstrating a triable issue of fact as to any of her ostensible FCRA claims that are cognizable outside of the arbitration context, all Defendants are entitled to summary judgment in their favor on Ms. Grays' Claim 1 as to the events relative to her interest in the Mitsubishi and events occurring after the rescission of the sale of the Dodge Journey has been completed. Any claims arising from events surrounding her decision to purchase the Dodge Journey or rescission of such purchase are subject to arbitration and the stay described earlier, or are barred by Ms. Grays' failure to assert them in arbitration.

**D.  Claim 16 – C.R.S. § 4-5-109(a)**

The remaining portion of Ms. Grays' Claim 16 alleges that the Defendants violated C.R.S. § 4-5-109(a). That statute, a portion of Colorado's adoption of the Uniform Commercial Code, provides that if a person makes a demand on an issuer of a letter of credit, and the issuer believes that the letter of credit is forged or fraudulent, the issuer may choose to honor the letter of credit only in certain specific circumstances.

The application of this section to Ms. Grays' factual allegations is entirely unclear. This portion of Ms. Grays' Complaint recites a litany of actions by the Defendants that she contends were fraudulent (only some of which fall outside the transaction involving the Dodge Journey,

18

and thus, could be pursued in this action instead of through arbitration), but none of those allegations describe any situation in which Ms. Grays or any other person tendered a "letter of credit" as defined by Colorado law.  C.R.S. § 4-5-102 defines a "letter of credit" as an undertaking "by an issuer" – typically a bank or other entity extending credit – "to a beneficiary" – that is, a person considering advancing goods or services to the subject of the letter – on behalf of an "applicant" – that is, the person seeking the extension of credit.  Much like a loan commitment letter, a letter of credit tells the beneficiary that there is an issuer who has agreed to extend credit to the applicant, essentially guaranteeing the beneficiary that the issuer will make payment on the applicant's behalf if the beneficiary provides goods or services to the applicant without requiring advance payment.  The beneficiary then presents the letter to the issuer and the issuer is obligated to pay the beneficiary the sums incurred by the applicant and covered by the letter (unless the issuer believes the presented letter is fraudulent, in which case C.R.S. § 4-5-109(a) indicates the circumstances in which the issuer must nevertheless honor the fraudulent letter).

In this instance, Ms. Grays never possessed or presented anything resembling a letter of credit – that is, a promise from a bank or other issuer that would advise Auto Mart that the issuer would ensure that Auto Mart received payment for the Dodge Journey if it provided that vehicle to Ms. Grays now.  Thus C.R.S. § 4-5-109(a) is entirely inapplicable. Accordingly, the Defendants are entitled to summary judgment on the remaining portion of Claim 16.

### E.  Claim 20 - violation of TILA, 15 U.S.C. § 1638(a) and (b)

The cited portions of TILA require a lender to disclose certain facts about a loan to the borrower: namely, the identity of the creditor, the amount financed (in certain particulars), and that upon the borrower's request, the lender shall provide the borrower an itemization of the

19

amount being financed.  15 U.S.C. § 1638(a), (b).  The individual Defendants seek summary

judgment on this claim in their favor; Auto Mart contends that this claim is necessarily

encompassed by the ongoing arbitration.

It is difficult to conform the cited statutory provisions to the allegations in Ms. Grays'

Complaint.  Ms. Grays alleges that: (i) the Defendants failed to identify the "six creditors" that it

purportedly sought to finance Ms. Grays' purchase; (ii) that the Defendants lacked authority "to

pass the plaintiffs' consumer information to any creditor"; (iii) that the "Defendants' website did

not contain any disclosures and did not correctly reflect the terms of the legal obligation of each

party"; and (iv) that although Auto Mart's website did not state "any estimate of obligation in

any disclosure" if Auto Mart were to internally finance a purchase.  Ms. Grays' summary

judgment response does not shed any additional light on Claim 20, stating only that it is a

"restatement of Claim Two."[10]

Ms. Grays has not alleged facts that suggest that any Defendant violated 15 U.S.C.

§1638(a) or (b) as it relates to the Mitsubishi Outlander, particularly because it is undisputed that

no sale of that vehicle occurred, and thus, there was no lending of funds and no requirement of

TILA disclosures relating to that vehicle.  As to the sale of the Dodge Journey, any claims of a

violation of TILA's requirements would be subject to arbitration or are otherwise barred.[11]  To

the extent Ms. Grays' TILA claim instead turns on some obligations that Auto Mart incurred by

---

[10]     The arguments Ms. Grays offers in support of Claim Two do not meaningfully clarify the
contours of Claim 20.

[11]     In any event, the Court observes that, the Sale Contract  in the record, Docket # 107-6,
specifically contains a section entitled "Federal Truth In Lending Disclosures" disclosing all the
information required by those statutory provisions: (i) the name of the initial lender ("Auto Mart
USA"), (ii) the amount financed ("$20,722.53"), and (iii) an itemization of the amount financed.

virtue of having a website that lacked certain disclosures, the claim fails because TILA applies only when a lending "transaction" occurs.  15 U.S.C. § 1681(a).  No transaction had yet occurred at the time Ms. Grays viewed Auto Mart's website or even when she inquired about the Mitsubishi.  The "transaction" occurred only once she agreed to purchase the Dodge Journey.  Accordingly, the individual Defendants are entitled to summary judgment on Claim 20.

   **F.  Ms. Grays' Motion – Claims 5 and 6, and remaining claims relating to the Mitsubishi Outlander**

   In the interests of completeness, the Court briefly addresses Ms. Grays' summary judgment motion to the extent it seeks summary judgment on her Claims 5 and 6.  As noted above, those claims appear to assert common-law fraud claims under Colorado law, contending that the Defendants misrepresented their hard credit checks as soft checks, misleadingly advertised that "credit approval [was] guaranteed," and falsely advertised vehicles without disclosing that they had salvage titles.[12]  As to these matters, it appears to be undisputed that Ms. Grays has asserted these claims in arbitration, and thus, the Court declines to consider the claims to the extent that they relate to the transaction involving the Dodge Journey.  However, Ms. Grays' claims also appear to relate to her contention that the Defendants engaged in fraud or other unfair consumer practices when they failed to disclose that the Mitsubishi Outlander she was initially interested in had a salvage title.  Because claims relating to the Mitsubishi vehicle fall outside of the scope of arbitration, the Court considers Ms. Grays' summary judgment motion only with regard to those limited claims.

---

[12]     Ms. Grays' Amended Complaint also invokes Colorado's "Unfair Practices Act," C.R.S. § 6-2-101 *et seq.*, but the unfair practices that statute addresses involve restraints of trade, price discrimination, and other acts that are not at issue in this case.

Ms. Grays' common-law claims sound in various iterations of fraud. To establish a claim of fraud under Colorado law under any of these variants, Ms. Grays must show: (i) that each Defendant falsely represented a material fact or concealed the existence of a material fact that should have been disclosed; (ii) the Defendant knew the fact was being misrepresented or concealed; (iii) that Ms. Grays was ignorant of the fact; (iv) the Defendant intended for Ms. Grays to rely upon the fact that was misrepresented or concealed; (v) that Ms. Grays justifiably relied on the misrepresented or concealed fact; and (vi) that she sustained injuries as a result. *See In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1272 (10th Cir. 2019); *Stewart Title Guar. Co.. v. Dude*, 708 F.3d 1191, 1193 (10th Cir. 2013).

The record regarding Ms. Grays' interest in the Mitsubishi Outlander is relatively limited. According to Ms. Grays' own affidavit, on or about March 17, 2018, she reviewed Auto Mart's website and became interested in a Mitsubishi Outlander that was advertised for sale. Mr. Grays states that the website did not indicate that the Outlander had a salvage title. Ms. Grays states that she was aware of Auto Mart's advertisements that stated "guaranteed credit approval" and various similar representations. Ms. Grays went to Auto Mart and met with Mr. Pacheco. Mr. Pacheco advised her that "all credit applications are approved and Auto [Mart] would perform soft inquiries against [her] credit." Mr. Pacheco then "entered [her] information into the computer" – Ms. Grays' affidavit does not elaborate upon which information was entered nor the purposes for which it was entered – "and then discloses the Mitsubishi Outlander's salvaged title." Although Ms. Grays' affidavit does not expressly state, it appears that the disclosure of the salvage title terminated Ms. Grays' interest in the Mitsubishi, and the parties then began discussing the Dodge Journey.

Ms. Grays' fraud claims relating to the Mitsubishi Outlander fail for a variety of reasons, but the Court focuses on the final element: the requirement that Ms. Grays show that she suffered an injury as a result of a misrepresentation or concealment by a Defendant in conjunction with the Mitsubishi.  To the extent Ms. Grays suffered some injury from Auto Mart's concealment of the Mitsubishi's salvage title, that injury had to occur within the narrow time frame between her viewing the vehicle on Auto Mart's website and Mr. Pacheco advising her that the vehicle had a salvage title.  Ms. Grays does not identify any such injury, and it is apparent that she could not have suffered any legally-redressible injury during that time.  In another affidavit, Ms. Grays identifies her injuries in this action as "loss of employment, housing, creditworthiness[,] severe emotional distress, physical injuries, [and] mental anguish including humiliation and fear." *Docket* # 116-1.  None of these injuries flow from the fact that Ms. Grays went to Auto Mart intending to purchase the Mitsubishi Outlander until she learned about its salvage title.[13]  Accordingly, Ms. Grays' motion for summary judgment as it relates to that portion of Claims Five and Six concerning the Mitsubishi Outlander is denied.

### G.  Claim 3 – Electronic Signatures in Global and National Commerce Act

---

[13]      To the extent Ms. Grays is intending to assert that the Defendants conducted "hard" credit checks, rather than the promised "soft" checks, in conjunction with her interest in the Mitsubishi Outlander, she has not come forward with facts that indicate that the Defendants performed <u>any</u> credit checks between the time she came to Auto Mart and the time Mr. Pacheco informed her of the salvage title.  At most, Ms. Grays alleges only that Mr. Pacheco "entered information into the computer." Without specifying whether that "information" was a credit check (much less whether it was a "hard" check or a "soft" check), or simply Mr. Pacheco recording mundane details such as Ms. Grays' name and contact information, Ms. Grays has not come forward with evidence that would entitle her to summary judgment on a fraud claim relating to such credit checks.

Ms. Grays' articulation of Claims Five and Six also appear to allege that the Defendants' representations of "guaranteed financing" were misleading, but there is no contention that Ms. Grays ever sought, much less was denied, financing for the Mitsubishi Outlander.

Finally, the Court turns to Ms. Grays' Claim 3, invoking the Electronic Signatures in Global and National Commerce ("E-SIGN") Act, 15 U.S.C. § 7001(c)(1).  According to Ms. Grays, this claim falls outside the scope of claims being arbitrated.[14]  The individual Defendants have sought judgment on it in their favor, arguing that no private right of action exists under the E-SIGN Act.  *Citing Levy-Tatum v. Naviant Solutions, Inc.*, 183 F.Supp.3d 701 (E.D.Pa. 2016).

The cited portion of the E-SIGN Act provides that, if a statute or regulation "requires that information relating to a transaction . . . be provided or made available to a consumer in writing," the party obligated to provide that written information may instead provide that information through "the use of an electronic record" if the consumer is advised of certain rights and affirmatively consents to such electronic notice instead.

Although *Levy-Tatum* is not binding on this Court, upon review of the statutory framework, this Court agrees that no private right of action is implied by the Act.  *See e.g. Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) ("private rights of action to enforce federal law must be created by Congress . . . no matter how desirable [a judicially-created remedy] might be as a policy matter, or how compatible with the statute").  In determining whether a statute creates a private right of action, this Court looks to Congressional intent, particularly for "rights-creating language" that "explicitly confers a right direction on a class of persons that

---

[14]     Ms. Grays does not identify which documents she was improperly served with electronically and this Court has grave doubt that such documents fall outside the scope of the transaction involving the Dodge Journey.  Nothing in the record suggests that any actions Auto Mart took with regard to the Mitsubishi Outlander triggered a legal obligation to provide Ms. Grays with any written disclosure, nor does it appear that any federal statute requiring written disclosures was triggered by any event after the sale of the Dodge Journey had been rescinded.  Thus, there is a high likelihood that, contrary to her argument, Ms. Grays' Claim 3 is subject to arbitration or otherwise barred.  Nevertheless, because no party has raised the issue or sought clarification of the factual basis for this claim, the Court takes Ms. Grays' representations at face value and considers Claim 3 despite the ongoing arbitration.

includes the plaintiff." *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004). Where Congress creates specific means for enforcing the statute, the Court assumes that Congress did not intend to allow any additional rights of action beyond that. *Id.*

Here, the Act clearly reflects a Congressional intent to favor the use of electronic records by deeming them to have the same effect as written ones. 15 U.S.C. § 7001(a) (requiring that records in electronic form be given legal effect). At the same time, Congress sought to balance the advancement of electronic recordkeeping against the possibility that electronic records might be foisted on unwilling consumers who preferred written ones. 15 U.S.C. § 7001(b)(2) (clarifying that the statute does not "require any person to agree to use or accept electronic records"). Thus, the operative portion of the statute, 15 U.S.C. § 7001(c), provides that, with regard to laws that require a person to deliver information in writing, an electronic version of that written document will suffice <u>if</u> the recipient has given the appropriate consent.

In this sense, then, the statute is self-effectuating: if a law requires a person to deliver information in written form and provides a remedy for a violation of that requirement, a person who points to an electronic record as proof that the required delivery was made will also be required to establish that the recipient properly consented, pursuant to 15 U.S.C. § 7001(c), to receive the electronic version instead of the written one. Failure to demonstrate the proper consent for electronic service thus exposes the person required to deliver the information in writing to whatever sanctions the law requiring written disclosure provides. Put another way, if some provision of TILA or the FCRA required Auto Mart to provide Ms. Grays with certain information "in writing," and Auto Mart instead provided her that information electronically, Auto Mart must demonstrate that it properly secured Ms. Grays' consent to electronic service pursuant to 15 U.S.C. § 7001(c). In the absence of such a showing, Auto Mart will be liable for

whatever penalties TILA or the FCRA contain for failing to give the required written notice. Congress appears to have provided no separate remedial scheme for violation of the E-SIGN Act's consent provisions because no standalone remedy is necessary.

Thus, the Court agrees with *Levy-Tatum* that no private right of action exists under the E-SIGN Act, and the individual Defendants are entitled to summary judgment on Ms. Grays' Claim 3.

### H.  Fed. R. Civ. P. 56(f)

The claims in this action are extremely fragmented, due to Ms. Grays' contention that various claims relate to both the purchase of the Dodge Journey and the intended purchase of the Mitsubishi Outlander, the assertion of claims against (and the separate motions made by) the individual Defendants and Auto Mart, and the referral of some claims to arbitration.  In the interests of streamlining this case going forward, the Court takes it upon itself to trim out those claims that cannot meaningfully be maintained.

Fed. R. Civ. P. 56(f)(3) provides that "after giving notice and a reasonable opportunity to respond, the court may . . . consider summary judgment on  its own after identifying for the parties the material facts that may not be in dispute."  For the reasons stated above, it appears to the Court that many of Ms. Grays' claims cannot be established and warrant resolution via summary judgment.  Specifically:

• Given the apparent absence of evidence of any cognizable injury relating to the incident with the Mitsubishi Outlander, the Court believes that entry of summary judgment in favor of all Defendants on all claims by Ms. Grays that involve the Mitsubishi Outlander may be appropriate.  Ms. Grays has alleged that Claims 5-7, 11-12, and 15-19 all contain components that arise from wrongdoing by the Defendants relating to the contemplated Mitsubishi Outlander

transaction.  Although the Court has profound doubts as to whether certain claims -- *e.g.* Claim 7, which cites to C.R.S. § 5-3-110, a statute that prohibits deceptive statements "with regard to the rates, terms, or conditions of credit of a consumer credit transaction," even though Ms. Grays never engaged in any credit transaction involving the Mitsubishi – are cognizable with regard to the events involving the Mitsubishi Outlander, the Court need not parse the issue more finely.  It is clear that, for purposes of standing alone, <u>any</u> claim Ms. Grays might assert with regard to these events has requires her to demonstrate that she suffered a legally-redressible injury.  *See Little Sisters of the poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2379 at n. 6 (2020); *see also Platt v. Winnebago Indust., Inc.*, 960 F.3d 1264, 1276 (10th Cir. 2020) (claims for violation of Colorado Consumer Protection Act require showing of "injury in fact to a legally protected interest").  Thus, in the absence of evidence of a redressible injury relating to events surrounding Ms. Grays' interest in the Mitsubishi Outlander, judgment in favor of all Defendants on all of the cited claims would be appropriate.

• Although the individual Defendants moved against and have been granted summary judgment on Claims 3 and 20, Auto Mart has not so requested.  Nevertheless, the Court's reasoning would apply with equal force to those claims as asserted against Auto Mart.

Accordingly, within 14 days, Ms. Grays produce any evidence and/or legal argument she may have that would address these claims.  Should Ms. Grays fail to produce sufficient evidence and/or argument, the Court will enter summary judgment to all Defendants on these claims.

## *I.* **Summary**

All Defendants are entitled to summary judgment on Claims One and Sixteen (to the extent it alleges a violation of C.R.S. § 4-5-109).  In addition, the individual Defendants are entitled to summary judgment on Claims 3 and 20.  Ms. Grays shall have 14 days to come

forward with evidence and/or argument sufficient to demonstrate a cognizable claim on the issues addressed above.

With those exceptions, the Court does not determine the remaining claims (*i.e.* those relating to the transaction involving the Dodge Journey) to the extent they are asserted against the individual Defendants, because due to the individual Defendants' status as agents of Auto Mart during the events herein, adjudication of those individual claims could produce inconsistent results with the pending arbitration of those same claims against Auto Mart.  Thus, all remaining claims against the individual Defendants are stayed pending completion of the arbitration proceedings.  Upon the completion of those proceedings, any party may, upon a showing of adequate cause, move to lift the stay and resume this case to seek adjudication of the remaining claims against the individual Defendants, subject to any defenses that may exist at that time.

## II.    Remaining Issues

Two further matters remain: Ms. Grays' Objections (**# 130**) to a January 28, 2020 Order (**# 127**) by the Magistrate Judge granting in part and denying in part Ms. Grays' Motions to Compel (**# 104, 120**) and Motion to Withdraw (**# 125**) her voluntary dismissal of claims against former Defendant JB Ovalle, and an April 17, 2020 Recommendation (**# 146**) by the Magistrate Judge that various motions by Ms. Grays be resolved in particular ways.  No party has filed Objections to that Recommendation.

### A.  Ms. Grays' Objections

Ms. Grays filed two motions to compel discovery of various items from Auto Mart, including "rate sheets" (which include financing information such as minimum credit scores, maximum loan amounts, and lender and dealer fees), data from a computer system called ProMax, insurance information, and any information regarding the Mitsubishi vehicle that Ms.

28

Grays viewed on Defendants' website.  Those motions also sought sanctions against the Defendants for "abusive deposition conduct." Separately, Ms. Grays filed a motion requesting to "retract" her voluntary dismissal of her claims against Mr. Orvalle and sought permission to serve Mr. Ovalle by publication or mail pursuant to Colo. R. Civ. P. 4(g).  (# 125).

On January 28, 2019, the Magistrate Judge issued an order granting in part and denying in part Ms. Grays' motions to compel and denying Ms. Grays' motion for substitute service. (#127).  More specifically, the Magistrate Judge denied Ms. Grays' motion to compel the 2018 rate sheets because there was no indication they exist.  As to ProMax data, which pertains to any documents related to Ms. Grays' attempted purchase of the Dodge Journey, the Magistrate Judge granted the motion and ordered the Defendants to produce any "hidden" documents regardless of whether Defendant believes they contain relevant information.  The Magistrate Judge denied Ms. Grays' request for sanctions for abusive deposition conduct and noted that while both parties' conduct "needs improvement", it did not warrant sanctions.  The Magistrate denied Ms. Grays' request for attorney fees and costs, noting a "*pro se* litigant, regardless of whether or not an attorney, is not entitled to attorney's fees."  The Magistrate granted the motion to compel and ordered the Defendants to produce any outstanding insurance agreements.  And the Magistrate Judge denied Ms. Grays' request to serve Defendant JB Ovalle by mail publication finding insufficient evidence in the record that Ms. Grays had been diligent in attempting service on Defendant JB Ovalle.

Ms. Grays' Objections raise several points, which the Court addresses *seriatim*.

First, Ms. Grays appears to seek reconsideration of this Court's April 29, 2019 Order on Motion to Compel Arbitration and Stay Proceedings.[15]  **(# 49)**.  However, the Court declines to address the motion because it violates the Local Rules of Practice for the District of Colorado, *see*, e.g., D.C. COLO. L. Civ. R 7.1(d) which requires a motion to be "filed as a separate document."  In any event, Ms. Grays does not articulate any particular grounds for reconsideration of that Order, much less demonstrate that "new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous." *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

Next, Ms. Grays argues that the Magistrate Judge erred in finding that the Defendants' conduct during depositions was not so abusive as to warrant sanctions.  The Court reviews this non-dispositive finding for clear error pursuant to Fed. R. Civ. P. 72(a).  As to the matter of abusive deposition conduct, Ms. Grays' Motion to Compel **(# 104)** is slight, stating only that depositions were "detrimentally impacted by counsel's continuous objections, surmounting [sic] to over one hundred and seventy within the six hours of depositions. . .  Mr. Daniel Ramirez stated 'I don't know' a total of thirty-six times during three hours."  The motion attached only a six-page excerpt from Mr. Ramirez's deposition, the salient feature of which is a somewhat contentious exchange between Ms. Grays, who asks Mr. Ramirez to "Name all third parties and/or service providers AutoMart USA uses to conduct its business" and the Defendants' counsel, who objects to the question as exceeding the scope of Mr. Grays' Rule 30(b)(6) notice

---

[15]     Ms. Grays also believes that the Magistrate Judge's Order somehow disposed of certain claims, possibly those involving the Mitsubishi Outlander.  Because the Court addresses those claims in this Order, it disregards this argument in Ms. Grays' Objections.

and for being overbroad. [16]  *Docket* # 104-4.   The entire exchange consumes slightly more than

one page of the deposition transcript.  In a reply brief, Ms. Grays eventually attached the entire

transcript of Mr. Ramirez's deposition.  *Docket* # 112-11 through -14.  The Court has reviewed

the entirety of that transcript and finds that the Magistrate Judge's conclusion that the Defendants

did not engage in sanctionable conduct was not clearly erroneous.  Although there were a

handful of lengthy exchanges (no instance exceeding two pages of a roughly 160-page transcript)

between them, most disputes concerned disagreements between Ms. Grays and Defendants'

counsel about whether the Defendants had produced certain materials in previous rounds of

discovery.  Such discussions are better conducted between counsel, not during the course of a

deposition, and the record suggests that Ms. Grays could, and perhaps should, have sought to

address this matter separately with defense counsel rather than on the record during Mr.

Ramirez's deposition.  In this sense, the Court agrees with the Magistrate Judge that both sides

bear a roughly equal share of blame for the sporadic and mostly brief digressions occurring

during the deposition.  Moreover, the Court rejects Ms. Grays' argument that Defense counsel

interposed unreasonable objections during Mr. Ramirez's deposition.  A review of the transcript

indicates that although objections were frequent, they were almost always briefly stated and did

not unduly interfere with Ms. Grays' examination of the witness.  Accordingly, the Court

overrules Ms. Grays' Objections on this point.

---

[16]     Ms. Grays' contention at the deposition that the Defendants "can't do that" – object to an
overly broad question – and that "the only objection you can make here is under privilege or
work product" finds no support in Fed. R. Civ. P. 32(d)(3).  Although subsection (A) of that rule
provides that objections to relevance are not deemed waived if not promptly asserted, nothing in
the rule prohibits a party from contemporaneously asserting such an objection.  (And, arguably,
Defense counsel's objection could be construed as one to the form of the question, an objection
that counsel was required to raise contemporaneously pursuant to subsection (B)(i) of that Rule.)

Next, Ms. Grays objects to some portion of the Magistrate Judge's ruling regarding production of the ProMax data.  This objection is somewhat difficult to parse, given that the Magistrate Judge agreed with Ms. Grays and granted her motion in part, compelling the Defendants to "produce copies of each tab referenced by Ms. Grays" and that "any 'hidden' data should be produced if it has not already."  Ms. Grays' Objections seem to complain that, <u>after</u> the Magistrate Judge's ruling, she engaged in further discovery relating to the ProMax data, including visiting Auto Mart's premises and viewing certain material that Auto Mart thereafter failed to provide to her.  Because these Objections do not point to any error in the Magistrate Judge's ruling, but instead, raise an entirely new discovery dispute that has not been properly presented to the Court, the Court overrules Ms. Grays' Objections on this point.

Finally, Ms. Grays objects to the Magistrate Judge's refusal to grant her attorney fees and costs pursuant to Fed. R. Civ. P. 37(a)(5).  The Magistrate Judge addressed this issue only briefly, stating that Ms. Grays' motion is denied "[as to] attorney fees and costs," stating in a footnote that "it is axiomatic that a pro se litigant . . . is not entitled to attorney's fees."  *Citing Key v. Ehrler*, 499 U.S. 432, 438 (1991).  Ms. Grays argues here at some length that *pro se* litigants should be afforded the same right to recovery as represented litigants, and also appears to argue that the Magistrate Judge should have considered awarding attorney fees, or an amount equivalent thereto, separately as some form of sanctions.  This Court rejects Ms. Grays' argument and agrees with the Magistrate Judge that the rule that *pro se* litigants may not recover attorney fees for their own time or the time of their assistants is so firmly-established in this Circuit as to be axiomatic.  *See Robertson v. Biby*, 719 Fed.Appx. 802, 805 (10th Cir. 2017).  Contrary to Ms. Grays' arguments, the same rule applies to awards of attorney fees under Fed. R. Civ. P. 37 itself.  *See Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1375 (Fed. Cir.

2002) ("Rule 37 does not empower the district court to award attorney fees to a *pro se* litigant"). To the extent Ms. Grays sought an award of sanctions through some other mechanism, she was free to seek it from the Magistrate Judge.  Neither of her motions to compel make any cogent argument for an award of sanctions other than through Rule 37.  Accordingly, the Court cannot say that the Magistrate Judge's tacit refusal to award such sanctions constituted an abuse of discretion.

However, the Court agrees with Ms. Grays that the Magistrate Judge's ruling is silent as to any award of expenses, separate from fees.  Rule 37 provides that if a motion to compel is granted – and Ms. Grays' motion at Docket # 104 was granted in part – "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in the motion."  Fed. R. Civ. P. 37(a)(5)(A). The Rule is mandatory in its language, allowing the court to deny an award of expenses only upon specific findings that the movant failed to make good faith efforts to resolve the dispute prior to filing the motion, the opposing party was substantially justified, or that "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  There is some authority for the proposition that although *pro se* litigants cannot recover attorney fees under Rule 37(a)(5), they can recover "documented and reasonable litigation costs" under that Rule.  *See e.g. Richard v. Dignean*, 322 F.R.D. 450, 466 (W.D.N.Y. 2019); *Walker v. Tri-Tech Planning Consultants, Inc.*, 149 F.R.D. 22, 23 (E.D.N.Y. 1993).  Because the Magistrate Judge did not make findings concluding that an award of expenses to Ms. Grays was inappropriate,[17]

---

[17]   Arguably, the Magistrate Judge's finding that "Ms. Grays has not established that the delayed documents are of such a nature that the delay in producing them has hampered Ms. Grays' ability to prosecute her claims" could be construed as a finding of "other circumstances mak[ing] an award of expenses unjust" under Fed. R. Civ. P.  37(a)(5)(A)(iii).  But rather than

Rule 37 appears to make such an award mandatory. Accordingly, the Court sustains that portion of Ms. Grays' Objections that contends that the Magistrate Judge erred in not awarding her reasonable expenses for the bringing of a motion to compel further disclosure of the ProMax data. Within 14 days of this Order, Ms. Grays shall file an affidavit and supporting documentation itemizing the reasonable expenses she incurred specifically with regard to moving to compel production of the ProMax data. Within 7 days of Ms. Grays filing that affidavit, the Defendants may file a response. This Court will then consider what reasonable expenses should be awarded under Rule 37.

Accordingly, Ms. Grays' Objections are sustained in part and overruled in part.

## B. The Recommendation

The Magistrate Judge's April 2020 Recommendation **(# 146)** addresses several motions, including recommending that Ms. Grays' request to file a Third Amended Complaint **(# 119)** be granted in part[18] and denied in part, and that various other motions by Ms. Grays be denied. No party has filed Objections to the Recommendation. In the absence of objections, the Court reviews the Recommendation under any standard of review it deems appropriate. *Summers v.*

---

ascribe substance to a statement that may not have been intended as such a finding, this Court finds that the better course of action is to consider that conclusion by the Magistrate Judge within the context of awarding <u>reasonable</u> expenses to Ms. Grays under Rule 37. In other words, the amount of expenses that it would be reasonable for Ms. Grays to incur in moving to compel production of the ProMax data would have to be judged, in part, based on the Magistrate Judge's finding that the lack of such documentation did not materially impair Ms. Grays' ability to pursue her claims. It may very well be that the amount of expenses Ms. Grays could reasonably incur in seeking further discovery of the ProMax data may be $0.

[18]     Specifically, the Magistrate Judge recommended that Ms. Grays be permitted to amend her Complaint to add a request for exemplary damages as to her common-law fraud claims (Claims 7 and 16, as identified by the Magistrate Judge), to dismiss claims against Mr. Ovalle (already dismissed by the Court), and to correct the spelling of Mr. Abssi's last name. The Magistrate Judge recommended that leave to amend be denied in all other respects.

*State of Utah*, 927 F.3d 1165, 1167 (10th Cir. 1991).  The Court has reviewed the Recommendation for clear error and, finding none, adopts it in its entirety.  Thus, Ms. Grays' Motion to Amend **(# 119)** is granted in part and denied in part as set forth in the Recommendation.  Because the permitted alterations to the current Complaint are minor and/or redundant, the Court deems the current iteration of the Complaint to be amended accordingly and no new pleading need be filed.  Ms. Grays' Second Motion To Amend **(# 134)**, Motion for Sanctions **(# 135)**, Second Motion for Sanctions **(# 136)**, and Motion to Compel **(# 128)** are all denied.

## CONCLUSION

For the foregoing reasons:

1.  Ms. Grays' Motion for  Summary Judgment **(# 109)** is **GRANTED IN PART**, insofar as the Court finds no triable issue of fact as to whether the individual Defendants were acting as agents of Auto Mart at all times relevant herein, and **DENIED IN PART** in all other respects.

2.  The individual Defendants' Motion for Summary Judgment **(# 107)** is **GRANTED IN PART**, insofar as the individual Defendants are entitled to summary judgment in their favor on Ms. Grays' Claims 1, 3, 16 (to the extent it alleges a violation of C.R.S. § 4-5-109), and 20, and **DENIED IN PART** in all other respects.

3.  Auto Mart's Motion for Summary Judgment **(# 108)** is **GRANTED**, insofar as Auto Mart is entitled to summary judgment in their favor on Ms. Grays' Claims 1 and 16 (to the extent it alleges a violation of C.R.S. § 4-5-109).

4.  Pursuant to Fed. R. Civ. P. 56(f), within 14 days, Ms. Grays shall file any evidence and/or argument she may have that would demonstrate a triable issue of fact as to: (i)

whether she suffered any cognizable injury sufficient to support her various claims arising out of any conduct by any Defendant up to the point at which she was advised that the Mitsubishi Outlander had a salvage title; and (ii) any colorable claim she can assert against Auto Mart under the E-SIGN Act, Claim 3, or any non-arbitrable TILA claim that she can assert against Auto Mart under Claim 20.

5.  With the exception of those claims addressed above, all remaining claims against the all Defendants are **STAYED** pending resolution of the arbitration between Ms. Grays and Auto Mart.  Upon the conclusion of that arbitration, either side may file a motion requesting further proceeding to resolve any claims in this action that can still be pursued in light of the arbitral ruling.

6.  Ms. Grays' Objections **(# 130)** to the Magistrate Judge's January 28, 2020 Order **(#127)** are **SUSTAINED IN PART** and **OVERRULED IN PART**.  The Court **AFFIRMS** all of the Magistrate Judge's ruling with the exception of that portion that denying Ms. Grays the reasonable expenses she incurred in moving to compel production of additional ProMax documents, pursuant to Fed. R. Civ. P. 37(a)(5).  Within 14 days, Ms. Grays shall file an affidavit and supporting documentation identifying those expenses, and the Defendants shall have 7 days to respond.

7.  The Court **ADOPTS** the Magistrate Judge's April 17, 2020 Recommendation **(#146)**.  Ms. Grays' Motion for Leave to File a Third Amended Complaint **(#119)** is **GRANTED IN PART** and **DENIED IN PART**, on the terms set forth in the Recommendation.  As discussed herein, no filing of any new pleading is required.  Ms. Grays' Second Motion To Amend **(# 134)**, Motion for Sanctions **(# 135)**, Second Motion for Sanctions **(# 136)**, and Motion to Compel **(# 128)** are all **DENIED**.

Dated this 26th day of October, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge